## DYER v. MUHLENBERG COUNTY, KY., et al.

### (Circuit Court of Appeals, Sixth Circuit. July 8, 1902.)

### No. 1,065.

1. COMPROMISE AND SETTLEMENT—CONTEMPORANEOUS AGREEMENTS—CONSTRUCTION.

A county was indebted on a series of railroad bonds to an amount equal to about one-fourth the value of all its taxable property, and numerous judgments had been recovered on such bonds, which could not be collected. The legislature authorized it to compromise such indebtedness, and for that purpose to levy taxes and issue new bonds, and a part of it had been so compromised. Plaintiff, who was the owner of a number of judgments on the old bonds and also of one rendered on some of the new issue, entered into two written agreements with the county on the same day, by the first of which it was provided that, in consideration of similar agreements by the other creditors, plaintiff's judgments on the old bonds should be compromised for 20 per cent. and costs, to be paid by the county by a day named. The second agreement recited that it was made in consideration of the first, and provided that on the same date the county should pay the remaining judgment in full. *Held,* that such agreements were parts of the same contract, to be construed together, and that the acceptance by plaintiff of payment of the second judgment after the date fixed by the contract, with knowledge that such payment was made from taxes levied and collected to carry out the compromise agreement, and which, under the constitution of the state, could be used for no other purpose, was a waiver of the right to insist that time was of the essence of the contract, and bound him to carry out the compromise agreement as to the other judgments.

2. SAME—CONSIDERATION.

The contract, having been made in consideration of similar agreements by the other creditors, and as a part of a general scheme to settle and adjust the entire indebtedness of the county, was based on a valid consideration, and the other creditors who came into the scheme had an equitable right to its fulfillment, which made it binding on both the parties.

3. SAME.

The fact that the judgments on the old bonds stood in the name of plaintiff alone, while that on the new bonds was in the name of himself and his partner, did not alter the effect of the receipt of payment as a waiver, where the contracts were executed by both, and recited their joint ownership of all the judgments, and it appeared that in fact they were so owned.

4. TENDER—SUFFICIENCY—CONDITIONS

Where a compromise agreement required a judgment debtor to pay a certain sum upon which the creditor bound himself to release the debtor "from any and all liability on said judgments," a tender of the sum due thereunder was good, though made "in full of principal, interest, and costs."

In Error to the Circuit Court of the United States for the Western District of Kentucky.

By an act passed by the legislature of Kentucky February 24, 1868, the several counties of that state were authorized to subscribe to the capital stock of any railroad company whose line should pass through the county, and to issue its bonds therefor, upon a vote of the electors at an election ordered by the county court. At an election held thereunder in Muhlenberg county it was voted to subscribe $400,000 to the stock of such a railroad company, and issue its bonds for that sum, with interest at 7 per cent. The subscription was made, and the bonds were issued bearing interest coupons. For five years thereafter the interest was paid by the county, but in 1873 the county defaulted, and repudiated its bonds upon the ostensible

ground, among others, that the county court had not ordered the election as provided by the statute; the real ground probably being the heavy burden of the debt, which was out of all proportion to the property of the county. Many suits were brought and judgments obtained by the holders of the bonds, but, in consequence of the resistance of the people of the county, and the shifts and devices of its officials, when any were elected, by resignation or concealment of themselves, or otherwise, the judgments could not be collected, either by execution or mandamus. Another act was passed by the legislature in 1878, authorizing the county to compromise and pay or fund its bonds by the issue of new bonds for the amount for which the old bonds should be compromised, and to levy taxes to pay the old bonds at the amount agreed upon, or the new bonds, as the case might be. Most of the bonds were thereupon compromised at 20 cents on the dollar, and new bonds issued, when the proceeding was suspended by an injunction of a state court in a suit brought by taxpayers. This injunction was finally dissolved upon an appeal to the supreme court of the state. But in the meantime the holders of both the old and new bonds had been unable to collect them. Under the provisions of the refunding act just mentioned, the county compromised most of the old bonds, and its officials constituted the Fidelity Trust & Safety Vault Company of Louisville the financial agent of the county for the purpose of converting the new bonds into funds for paying the sums required to take up the old bonds or exchanging the new for the old bonds in such proportion as should be agreed, and this purpose had been in part accomplished. The petitioner had obtained, several years before, a judgment in the United States circuit court for the district of Kentucky for the sum of $11,987 upon some of the old bonds, and he and one Gillett had also obtained another judgment in the same court for the sum of $17,169 upon some of the new bonds which had been issued to take up some of the old; neither of which judgments had the plaintiffs in those cases been able to collect. They had also acquired other judgments on old bonds by assignment. In this state of things, the county and Dyer and Gillett, on the 20th day of March, 1900, entered into a compromise agreement, consisting of two parts, both executed on the same day. The parts of this agreement were as follows. One was:

"This contract, made and entered into this 20th day of March, 1900, by and between Azro Dyer and S. P. Gillett, partners doing business under the name of Dyer & Gillett, of Evansville, Indiana, of the first part, and Muhlenberg county, Kentucky, of the second part, witnesseth: That whereas, Muhlenberg county, Ky., subscribed $400,000 to the capital stock of the Elizabethtown & Paducah Railroad Company, and issued its bonds in payment of the same, but more than twenty years ago ceased to pay any interest on the said bonds, or to make any provision for the payment thereof, and in fact repudiated same, and now owes on account of the said original bonds about $650,000, the greater part of which indebtedness is in the shape of judgments against said county, which the owners thereof have found no way to collect; and whereas, the said county and the holders of the said bonds and judgments wish to compromise the same, and have mutually agreed on the terms of said compromise; and whereas, the said Dyer and Gillett now own the following judgments on the said original bonds, to wit: * * * Now, therefore, in consideration of the premises, and of the agreement of certain other owners of said bonds or judgments thereon to accept a like sum from said county in compromise of their respective debts, the said Dyer and Gillett have agreed, and do hereby agree, to accept in compromise and as full payment of all of the said judgments, twenty cents on the dollar of the principal and interest thereof as aforesaid, and payment in full of all the cost of actions in which said judgments were rendered, said payments to be made in cash on or before the first day of January, 1901; and upon the payment of the said money the said Dyer and Gillett further agree and bind themselves to release said county from any and all liability on said judgments, or any of them, on said old bonds, and to acquit them in full of all said indebtedness evidenced by the said judgments. And the said county of Muhlenberg agrees and binds itself to pay to the said Dyer and Gillett, in cash, on or before the first day of January, 1901, twenty cents on the dollar of the principal and interest of all of said judgments and the costs

of all of said actions in full upon the delivery to it of said acquittances from all of said indebtedness as aforesaid."

The other part was in the same words, with this added recital:

"Whereas, the said Dyer & Gillett own judgments against said county on said original bonds, which amount to about $124,502.80, and also own a judgment against said county, rendered in the circuit court of the United States for the district of Kentucky, at Owensboro, January 24, 1899, for the sum of $11,987, on which a balance of $10,600, with six (6) per cent. interest from October 1, 1899, remains unpaid: Now, therefore, in consideration of the premises, and of the written agreement of the said Dyer & Gillett, executed simultaneously herewith, and made a part hereof, to accept twenty cents on the dollar of the amount of said judgments on said original bonds, and payment in full of the costs of the actions in which said judgments were rendered, the said Muhlenberg county agrees that at the same time it shall pay said twenty cents on the dollar of said original debt on or before January 1, 1901, it will also pay to said Dyer & Gillett all the unpaid balance of their said judgment in the circuit court of the United States at Owensboro, said balance amounting, October 1, 1899, to $10,600, and bearing interest from that time until paid at the rate of six per cent. per annum."

In a letter dated August 29, 1900, the petitioner, in a letter addressed to the Fidelity Trust Company, said:

"It is understood that your company is the agent of the county to negotiate sale of the new bonds of the county. Kindly inform me what prospects, if any, you have of negotiating the new bonds, and when the transaction is likely to materialize."

And again, in a letter to that company, dated December 10, 1900, he said:

"Kindly write me whether or not Muhlenberg county is likely to get the money with which to carry out its compromise agreement by January 1st."

To these letters the Fidelity Trust Co., on December 10, 1900, made the following reply:

"12—10—1900.

"Azro Dyer, Esq., Atty. at Law, Evansville, Ind.—Dear Sir: Your letters of recent date, making inquiry with reference to Muhlenberg county bonds, received. We have the matter now under consideration, and we hope to have the money within a short time to carry into effect the agreement made between the bondholders and the county. This, we trust, will be done prior to the 1st of Jan.

"Very truly yours, John W. Barr, Jr., V. President."

On the 24th of the same month, T. J. Sparks and Wm. H. Yost, acting as commissioners for the county, addressed a letter to the plaintiff, stating that "the option you gave us on taking up your bonds—old issue—at twenty cents on the dollar expires on the first of next month, and we write you this letter to urge you to grant us a short extension." To this the petitioner, Dyer, replied:

"Evansville, Ind., Dec. 25, 1900.

"Judge T. J. Sparks, Greenville, Ky.—My Dear Sir: I have received your communication of yesterday, and, replying thereto, will say, in behalf of Mr. S. P. Gillett and myself, that we decline to extend the time of our contract. Wishing you the compliments of the season, I remain,

"Sincerely your friend, Azro Dyer."

On January 29, 1901, the county paid to Dyer & Gillett $1,000, and on March 19, 1901, another $1,000, on the judgment rendered on the new bonds. These payments were made from the tax levy of the county for the year 1900,—a levy made in furtherance of the compromise agreements with its creditors, Dyer and Gillett among the rest. The constitution of Kentucky (section 180), provides that "every ordinance passed by any county * * * levying a tax shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose."

On the 6th of May, 1901, the Fidelity Trust Co. wrote to the petitioner as follows:

"5—6—1901.

"Judge Azro Dyer, Atty. at Law, Evansville, Ind.—My Dear Sir: The Fidelity T. & S. V. Co., acting under instructions from the Muhlenberg fiscal court, is prepared and ready to pay in full to you all of the judgments obtained by you on the bonds of Muhlenberg county issued under the act of Mar., '78, and are likewise prepared to pay to you 20 per cent. on the dollar of the principal and interest of all of the judgments obtained by you on the old bonds of said Co., and also to pay the costs in full incurred in such actions. The Co.'s contracts with you bind it to pay the principal, interest, and costs of all the judgments you hold against said Co. on the new bonds and to pay you 20 per cent. on the dollar of all the judgments you hold against it on its old bonds, issued in 1869, and to pay the costs in full of all such actions in which judgments have been recovered. We are prepared, as before mentioned, to pay you these sums upon a receipt in satisfaction of the judgments, and if you will indicate in what way you prefer the funds to be sent to you we shall take pleasure in complying with your request. You can either present your judgments in person, or send the necessary papers to this company, with a draft attached for the amount, and the same will be paid. We would state to you that the interest has been calculated upon all of your claims up to and including the 10th day of May, 1901.

"Respectfully, John W. Barr, Jr., V. P."

To which he replied:

"Evansville, Ind., May 10, 1901.

"Mr. John W. Barr, Jr., Louisville—My Dear Sir: Have received your letter of the 6th, but do not understand its meaning. Muhlenberg county has no contract with me. I have only one unpaid judgment rendered in bonds of 1878, and that is the judgment entered in favor of Dyer & Gillett Jany. 24, 1899. In January last I furnished the county with a copy of the judgment. Any payment of the bond debt of 1878 ought to include an item of $23.15 cost of mandamus paid Thos. Sumner, clerk, June 21, 1898; also cost made in mandamus proceeding, case number 110, now pending in U. S. court, Owensboro. Kindly write me (1) whether it is necessary for me to furnish a second copy of the above-mentioned judgment; (2) the amount, according to your figures, due us May 10, 1901, on the debt of 1878; (3) the form of the voucher you want signed. It will save time to fix the precise amount due before making draft on your company.

· "Respectfully, Azro Dyer."

On the 16th of the same month the Fidelity Trust Company paid to Dyer & Gillett, out of the proceeds of the new bonds, the balance of their judgment against the county, and it was receipted for in full by them. At the same time the Fidelity Trust Company tendered to the petitioner, in gold, the whole sum due on his judgment on the old bonds, as fixed by the agreement of March 20, 1900, and accompanied the tender with the following communication:

"Louisville, Ky., 5—16—1901.

"Messrs. Dyer & Gillett—Dear Sirs: The Fidelity Trust & Safety Vault Co., acting under instructions from Muhlenberg county and the fiscal court of Muhlenberg county, hereby tenders to you in gold the sum of twenty-seven thousand one hundred ($27,100.00) dollars, in full of principal, interest, and costs to the present date, based upon the compromise arrangement heretofore entered into between said county and yourselves.

"Very respectfully, John W. Barr, Jr., V. P."

This tender was refused upon the ground that the agreement of March 20, 1900, had been forfeited by the failure to pay on or before January 1, 1901, and was no longer in force. Then, having made a demand for the levy of a tax to pay his judgment in full (which was refused), Dyer filed in the court below his petition for a mandamus to compel the levy. That court having denied his petition, a bill of exceptions was settled, and the case brought here on a writ of error.

Azro Dyer, for plaintiff in error.
W. L. Reeves, for defendants in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge, having made the foregoing statement of the case, delivered the opinion of the court.

The main question in this case depends upon the construction and effect of the compromise agreements between the parties made on March 20, 1900. It is strenuously contended by the plaintiff in error, and the point is emphasized in his brief in reply, that they are separate and distinct agreements, relating, the one, to the judgment recovered by himself on the old bonds, and the other, to the joint judgment of Dyer and Gillett on the new. And he says: "The promise of the county embodied in agreement No. 1 was supported by a good consideration. The promise in agreement No. 2 had no valid consideration to support it. The circumstances that the two agreements were made at the same time does not cure the defect." By which last proposition it is doubtless meant to say that the fact of their being contemporaneous does not necessarily import that they are dependent parts of one contract; and this, as a general statement of a rule of construction, may be admitted. But, to say nothing of the circumstances that the stipulations of these two agreements relate to a general purpose of effecting a compromise, they are interrelated by their express terms, and it is stated that the one is the consideration of the other. There cannot be the slightest doubt that the two agreements should be read as one. Although the other bondholders did not join in the particular agreement between the county and Dyer and Gillett, it sufficiently appears that it was a condition to the scheme of refunding or paying off the old bonds at 20 per cent. that all, or substantially all, the old bonds should be compromised, and that this was practically accomplished when the agreement here in question was made. Each of the numerous bondholders, therefore, had an interest in the assets which were to become available under the new effort of the county to disencumber itself. The old bonds amounted to about one-fourth of the whole taxable value of property in the county, and it was manifest that, if the tax levies were to be consumed by paying off the old bonds at par and interest, there could be nothing left for those coming into the new scheme. The agreement here in question recites that "the said county and the holders of said bonds and judgments wish to compromise the same, and have mutually agreed on the terms of compromise; and whereas, the said Dyer and Gillett now own the following judgments on the said original bonds: Now, therefore, in consideration of the premises, and of the agreement of certain other owners of said bonds or judgments thereon to accept a like sum from said county in compromise of their respective debts, the said Dyer and Gillett have agreed, and do hereby agree, to accept in compromise," etc. The other creditors have a clear and strong equity to the fulfillment of the contract, and their agreement in reference to their own bonds was a sufficient consideration to support the agreement of Dyer and Gillett in the present instance. So far as the agreement relates to the

payment of the judgment on the new bonds, it has been accomplished, and we have only to inquire, upon the point we are now considering, whether there was a sufficient consideration for the agreement in reference to the judgment on the old bonds. We think it clear that there was. In a letter of the county commissioners to Dyer, mentioned in the preceding statement, this contract is called an "option," and in the brief of the plaintiff in error it is claimed to be such. But that is a misnomer. It was a complete mutual engagement, and bound both the parties to its stipulations.

But it is contended that time was of the essence of the contract, and that by its failure to pay the amount stipulated on or before January 1, 1901, the county forfeited its right thereunder, and that the other parties were remitted to their original right. Whether, in the circumstances of this case, and especially having regard to the facts that time was not in terms made essential, and that the contract affected, and was affected by, the rights of the other creditors, it may be doubtful whether the court would be justified in applying the rule relied upon by the plaintiff in error. In the case cited— Clarke v. White, 12 Pet. 191, 9 L. Ed. 1046—the reason given for the rule is that, until the agreement is executed, it continues unilateral, and is not obligatory upon the creditor. Says the court: "It is generally true, in cases of composition, that the debtor who agrees to pay a less sum in discharge of a contract must pay punctually; for until performance the creditor is not bound." And undoubtedly this is so where the agreement is a mere privilege to the debtor, and is not one pervaded by the substantial elements of a mutual contract. But we need not pursue this subject in view of the conclusion we reach upon another point. It is undoubted that a party who has the right to strict performance of a contract in respect to the time thereof may waive it, and does so if he subsequently accepts the benefits of the contract. It is shown—indeed, is admitted—that subsequently to January 1st the petitioner received from the county two payments of $1,000 each upon the judgment rendered in favor of himself and Gillett out of moneys levied for that express purpose, and that on May 16, 1901, he received the balance of the judgment out of the proceeds of bonds sold for the purpose of enabling the county to pay this judgment. We can have no doubt that he knew from what source those moneys came, and that they had been raised for the purpose of meeting the obligations of the county assumed by the contract he had with it; and the agents of the county held the funds he received charged with that definite purpose, which he knew they could not rightfully disregard. His suggestion is that he was entitled to be paid his judgment on the new bonds any way, and that his reception of the payment was no more than his right. But the county had the right to have these funds applied to the fulfillment of its contract of March 20, 1900. His claim that he had repudiated the continuing obligation of the contract, and was, therefore, acting independently of it, cannot be sustained. If one's acts and speech do not conform with each other, the things done must have their due legal consequence, notwithstanding all protestations

to the contrary (Dodsworth v. Iron Works, 13 C. C. A. 552, 66 Fed. 483), and Dyer's intention must be held to be what his acts import.

The petitioner further contends that "the acceptance of payment by Dyer and Gillett of their partnership judgment did not operate as any waiver by Dyer of his individual rights in respect to the present judgment"; but we think it did. The evidence tends to show that, although Dyer was the nominal plaintiff in the case, the judgment really belonged to Dyer and Gillett, and the contract itself, to which Dyer was a party, so states.

Again, it is urged that the accepting of payment of the new judgment was not effectual as a waiver, because it was not supported by a valuable consideration. What we have already said disposes of this contention. The county, although it owed the judgment, had the right to determine the application of the funds. It had, as he knew, determined that they should be applied upon the contract, and not as a payment of the judgment independently considered.

Lastly, it is contended that the tender was insufficient. The reasons given are that it was made to Dyer and Gillett, whereas the judgment was in favor of Dyer alone, and "because it was not an absolute tender, but the money was offered on condition that it should be accepted in full of principal, interest, and costs." The first of these reasons is answered by what we have said upon another point. The tender was rightly made to the parties whom the contract recognized as the owners of the judgment. As to the second, no such objection was made at the time of the tender. It was refused upon the ground that the contract was no longer in existence. This technical objection, now made, appears to be an afterthought. The objection, not being taken at the time, was waived. Besides, the contract expressly stipulated that upon payment of the money Dyer and Gillett should release the county from all liability upon the judgments, and should acquit it of all liability upon "all of said indebtedness." It is not contended that the amount tendered was insufficient, or that there was any doubt as to what it was intended to cover. The judgment on the new bonds was already paid. It would seem, therefore, that the statement that the tender was made in full of principal, interest, and cost to that date was justified by the express stipulation of the parties. Certainly, such statement was not larger than a demand for the release and acquittance stipulated for, and in Hepburn v. Auld, 1 Cranch, 321, 2 L. Ed. 122, it was held that in such case the tender was not insufficient because it was accompanied by such a requirement.

We think the circuit court did not err in refusing the writ, and its order is affirmed.