## DODSWORTH et al. v. HERCULES IRON WORKS.

(Circuit Court of Appeals, Sixth Circuit. February 5, 1895.)

### No. 191.

1. AMENDMENT OF PETITION — VARIATION OF CONTRACT BY PAROL BEFORE BREACH.

A petition, filed under the code practice of Ohio in lieu of a common-law declaration, declared upon a written contract to recover the price of certain machinery. *Held,* that it was not error, after answer and reply, to permit the petition to be amended in this form of action so as to show a variation of the terms of the contract by parol before breach.

2. RESCISSION OF CONTRACT—CONTINUED USE OF ICE MACHINE.

A contract for the purchase of an ice machine cannot be rescinded after more than two years' use in the ordinary course of business, although the purchaser declined to accept the machine, and requested the vendor to remove same, within three or four months after its delivery.

In Error to the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

This was an action upon a written contract by the Hercules Iron Works against Caleb Dodsworth and others, in which the plaintiff obtained judgment. 57 Fed. 556. From this judgment, the defendants have sued out a writ of error.

In February, 1890, the Hercules Iron Works, a corporation of the state of Illinois, contracted to construct and erect for the defendants, Caleb Dodsworth and others, as partners, a machine and appurtenances for the production of ice, of the Hercules pattern and style, in accordance with certain specifications. This machinery was to be placed on the premises of defendants, and upon foundations prepared by them in accordance with plans furnished by plaintiff, and was to be completed and put in operation May 1, 1890, provided the foundations were prepared and possession of the premises given to the contracting corporation by March 15, 1890. The guaranties contained in the written contract were as follows: "First. That the machine will be capable of producing 25 tons of good, crystal, merchantable ice each twenty-four hours of continuous operation, provided it is kept in good order, and properly handled, and the temperature of the condensing water is not above 60 degrees Fahrenheit. Second. That the best material and workmanship will be used in the construction of the machine and apparatus; and, if any portion proves defective, we will furnish same free of cost. Third. We do not infringe upon the patent rights of any one, and will defend any suit brought against you of which we shall have timely notice. Fourth. * * * Fifth. That we will furnish one competent engineer for thirty days after the machine is erected and started, who will superintend its running as you may direct, and who will instruct your employés in care of machine. Sixth. It is our intention to give you our 25-ton machine complete in every detail, and if there is anything required to make the same complete, not specified herein, it will be furnished without any cost additional to that hereinafter named. Seventh. The whole plant will be completed and in operation about May 1st, provided you give us possession of the premises March 15th, and the foundations and platform are ready at that time. Eighth. When the machine is run at its maximum capacity, in good order, and properly handled, with condensing water at 60 degrees F., and with engineers at $2.50 per day, firemen $2 per day, laborers $1.50 per day, and Pittsburgh coal at $1.45 per ton delivered, water to be pumped from well with power pump, the cost to produce ice will not exceed 85 cents per ton, not including interest upon the investment." The penalty for nonperformance and for delay in completion was that the Hercules Iron Works should pay any actual damage that might accrue to Dodsworth and his partners, "not exceeding twenty dollars per day for each and every day until said plant is in operation, unavoidable accidents, however, excepted." The terms of payment were: One-third when the machinery has been delivered upon the premises; "the remaining two-thirds after the machinery has been running thirty days, provided it has performed the guaranty as herein stated." The first payment was made on delivery of the machinery. There was some delay by defendants in completion of foundations for the machinery, and in the completion of the building in which the plant was to be erected. The machinery was constructed and put in operation about June 1, 1890, and no point is now made as to this delay. The defendants took possession of the machinery, and have operated the same during the ice seasons of 1890, 1891, and 1892. Default having been made in the deferred payments, suit was begun in 1893 in the circuit court of the United States for the balance due on the contract, with interest.

The petition, filed under Ohio code practice in lieu of a common-law declaration, set out the contract, alleged full performance by the plaintiff, and that the defendants, after the plant had been in operation for more than 30 days, "received said ice machine and plant, and accepted the same." The plaintiff then averred that "it had performed all the conditions of said contract on its part to be performed, and has become entitled to the payment of the said price, according to the terms of the contract, with interest." The defendants answered, and made their answer a cross petition. The defenses set out were:

(1) That they had never accepted the said ice machine. (2) That the contract had not been performed according to its terms and conditions by the plaintiff, in that it had failed to furnish many parts thereof as required, particularly a certain power pump described in the contract. (3) That the guaranty with respect to the capacity of the machine to produce 25 tons of good, crystal, merchantable ice every 24 hours of continuous operation had not been performed; and that said machine was not, and never had been, capable of complying with said guaranty. (4) That they have called upon plaintiff to complete said machine, but it had refused and failed to do so. (5) That they had notified the plaintiff to remove the machine, but that it had failed and refused so to remove it. (6) By way of cross petition, it alleged that they had been greatly damaged by the plaintiff's breach of contract, and sought to recover as follows: (1a) The money they had paid to and on account of plaintiff, and for articles bought by the defendants which should have been furnished by plaintiff. (2a) That, in carrying out their part of the contract, they had expended large sums of money, which by failure of plaintiff to furnish the machinery within the time required, and of the kind and capacity required, were totally lost to defendants. The plaintiff, in reply, denied all and each of the allegations of the answer and cross petition not specifically admitted. It admitted that the force pump in the contract had not been furnished, but averred that it was omitted at the special instance and request of the defendants, and that the value of the same, which was $150, should be deducted from the contract price. The defendants, upon the filing of this reply, moved for judgment upon the pleading. This was overruled, and leave given plaintiff to amend the petition, which was done, by inserting therein a statement that the power pump had been omitted at request of defendants, and that the value of the same was to be deducted from the contract price. Upon these pleadings, the jury, upon the evidence and upon the law as charged, returned a verdict for $17,024.40, being the full balance claimed by plaintiff, with interest, less the value of the pump and certain small payments made to or for plaintiff, concerning which there was little or no controversy. From this judgment defendants have sued out a writ of error.

D. Wulsin, F. O. Suire, and Wm. Worthington, for plaintiffs in error.

Robert S. Fulton and Harmon. Colston, Goldsmith & Hoadly, for defendant in error.

Before LURTON, Circuit Judge, and SEVERENS and SWAN, District Judges.

LURTON, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The petition declared on the written contract. It alleged, as required by good pleading, that the plaintiff had fully performed the contract. This the plaintiff should aver, or, in the alternative, a willingness and readiness to perform, but for some conduct of the defendants sufficient in law to excuse performance. The plaintiff's reply to the defendants' answer admitted that a force pump had not been furnished, but, as an excuse, averred that it had been omitted at the special request and instance of the defendants, and that its value was to be deducted from the contract price. Upon this admission the defendants moved for judgment upon the pleadings. This was overruled, and the plaintiff allowed to amend by inserting in the petition the facts as to the pump. This action of the court is the subject of the first two assignments of error. The insistence of appellants is that this was and is a suit upon the contract, and that it is essential to any recovery in this suit, there being no common counts, that the plaintiff show a substantial compli-

ance with the terms of the contract, and that an admission that the contract was not completed by furnishing the power pump, whether that appears by the reply or on the evidence, is fatal to any recovery in this form of action. Aside from all question as to the materiality of this pump, or the effect of the acceptance alleged, the question presented by the refusal of the court to render judgment in favor of defendants, upon the admission in the reply that the pump had not been furnished, became immaterial upon the subsequent amendment of the petition, so as to show that the omission had been waived. The effect of the agreement by which this pump was to be omitted, and instead thereof a deduction made, was to amend the contract by parol before a breach. The contract was not one required by the statute to be in writing. But, if it had been, the result would be the same, under the ruling in Swain v. Seamens, 9 Wall. 272, 273. That was a bill to compel the defendant to cancel and discharge a certain mortgage according to the terms of an agreement with the complainant. The defendant resisted performance, upon the ground that a building which the plaintiff was to erect on his part did not in dimensions correspond with the stipulations of the agreement. The plaintiff replied that he (defendant) had acquiesced in the change, and had accepted the mill as built and completed. The court held that the defendant was estopped to deny that the contract had not been performed, or to set up the statute of frauds as a defense to the substituted performance, the court saying that:

"When a person tacitly encourages an act to be done, he cannot afterwards exercise his legal right in opposition to such consent, if his conduct or acts of encouragement induced the other party to change his position, so that he will be pecuniarily prejudiced, by the assertion of such adversary claim."

In Fleming v. Gilbert, 3 Johns. 528, the plaintiff's action was upon a bond. The defendant relied upon proof that the plaintiff had not performed the condition of the bond within the time specified therein. The plaintiff answered that the time of performance had by parol been extended; and so was the proof. The court, on appeal, said:

"The plaintiff's conduct can be viewed in no other light than as a waiver of a compliance with the condition of the bond, so far as it related to the mortgage on the record; and I see no infringement of any rule or principle of law in permitting parol evidence of such waiver. It is a sound principle of law that he who prevents a thing being done shall not avail himself of the nonperformance he has occasioned."

In Young v. Hunter, 6 N. Y. 207, the court said that:

"Independent of the question of waiver, if the defendants, by their acts, prevented the performance by the plaintiff of the conditions of his contract, he was excused from such performance. It is a well-settled and salutary principle that a party cannot insist upon a condition precedent when its nonperformance has been caused by himself."

Concerning the manner in which a plaintiff might avail himself of the defendant's waiver of performance in a particular way or time, it is said by an eminent text writer:

"The action having been brought upon the original contract, if the defendant set up that the plaintiff did not himself perform according to its

terms, the plaintiff may reply that he was ready to do so, but that it was dispensed with by the defendant assenting to a substituted performance; and his proof of such assent is not considered a variance from his declaration." Browne, St. Frauds, § 425.

In accord is Long v. Hartwell, 34 N. J. Law, 126, 127.

The conclusion must be that it was not error to suffer the petition to be amended so as to set out this omission and the defendant's assent thereto.

It was conclusively shown upon the evidence that the possession of this machinery was surrendered to the defendants in June or July, 1890, and that defendants had regularly used the same in the ordinary conduct of their business during the ice seasons of 1890, 1891, and 1892, and were still operating the same when this suit was begun and at the time of the trial. Defendants attempted to meet the force of this by putting in evidence two letters written by them in October, 1890, declining to accept the machinery, and notifying the plaintiff to remove it. The circuit judge, in respect to this conduct and its effect upon the defenses of the defendants, said:

"The plaintiff seeks to recover of the defendants, who were at the time the contract was made a partnership, the purchase price of an ice machine which the plaintiff was to erect upon the land belonging to the defendants. The purchase price stated in the contract is about $23,000. The plaintiff admits that it has received something over $7,000, and asks to recover the balance of the contract price of $23,000. The defendants, answering, say that they ought not to be compelled to pay for the ice machine, because it was not up to the contract. It appears from the evidence undisputed that the machine is still in the possession of the defendants, and that it was operated all the summer of 1890, and has been operated also during the summer of 1891, and during the summer of 1892, during the ice season of those years. It appears that the defendants in October, 1890, notified the plaintiff that they would not accept the machine, because it was not up to the contract. Now, in my view of the law, it was their duty, if they did not see fit to accept the machine, to take it out, after notifying the plaintiff to take it out; and, the plaintiff failing, it was the duty of the defendants to take out the machine, and then bring an action against the plaintiff with all the damages to which they had been put by reason of the failure of the plaintiff to perform the contract and give them a machine up to contract. They might, in that, charge the plaintiff with the cost of removing the machine, but they could not go on and use the machine after that, and then say they did not accept the machine. I am obliged, therefore, in my view of the law, which will doubtless be re-examined by a court of error, to hold that the only question in this case for you to consider is not whether the defendants are liable upon the contract, but it is to determine how much less than the contract price they ought to pay for the machine they have accepted under the contract."

There was no dispute as to what the conduct of the defendants had been in regard to the retention and use of this machinery. While it is true that in October, 1890, the defendants said they would not accept, yet their subsequent conduct was an unqualified contradiction of what they had said. The contract provided that two-thirds of the purchase price should be payable "after the machinery had been running thirty days, provided it has performed the guaranty as herein stated." The guaranty referred to was "that the machine will be capable of producing 25 tons of good, crystal, merchantable ice each twenty-four hours of continuous operation,

provided it is kept in good order, and properly handled, and the temperature of the condensing water is not above 60 degrees Fahrenheit." It is manifest that the intention was that 30 days' time should be allowed, after the machinery was put in operation, for testing its capacity, and within which defendants might elect to accept or reject. There was evidence tending to show that in July a test had been made, which established the capacity of the machine, and that defendant Rossa, who was acting as superintendent, declared himself satisfied as to the guaranty, and accepted the machinery. There was also evidence that the machinery was operated in the regular course of defendants' business from that test down to the October letters, near the close of the ice season. But the circuit judge passed by all which had occurred prior to the October letters, and put the case, so far as the question of rescission was concerned, on the acts of the defendants after those letters. If it be assumed that defendants had not lost the right to reject the machinery when they wrote the October letters, they clearly did abandon that right by their subsequent conduct. The machinery which had been constructed and delivered was in professed compliance with the contract. The plaintiff delivered it as a compliance, and the defendants so understood. This is evident from their own letters. Under these circumstances, the defendants, at most, were entitled to a reasonable time to determine, after testing and experimenting, whether they would accept it as a substantial compliance with the contract. If the rejection announced in October, 1890, had been adhered to, and the vendor had refused to remove the machinery, it ran the risk of being made liable for all the expenses and hazards of storage, in addition to damages for breach of contract. On the other hand, the defendants became subject to the general rule, that "he who seeks to reject an article as not in accordance with the contract must do nothing, after he discovers its true condition, inconsistent with the vendor's ownership of the property." Brown v. Foster, 108 N. Y. 390, 15 N. E. 608.

The fact which made the conduct of defendants conclusive upon their right of rescission was not the retention, for, under some circumstances, that might amount to little, but their use of the machine in the ordinary course of business for more than two years. There were three remedies open to the defendants when they discovered that this machinery was not in accordance with the contract. The first was to reject, and give notice of their determination to the vendor. This course, if adhered to, would have entitled them to sue for a return of purchase money, and such other damages as they had sustained by the failure of the vendor to furnish them the machinery according to the contract. If the machinery had not been removed by the plaintiff upon notice of rejection, then the defendants might have removed and stored it, subject to the risk of the seller; or, if suffered to remain, they might have recovered storage. The second remedy open to defendants was to accept the machinery, and bring an action for breach of the warranty in the contract. The third remedy, having paid but part of the price, was to set off by way of counterclaim, when sued by the

buyer for the balance due, the damages sustained by the failure of the machinery to comply with the contract. Benj. Sales (Corbin Ed.) § 1348. The right of rejection was lost by the long-continued use of the machinery, which use was utterly inconsistent with a purpose to resort to the first remedy which was open to them, and consistent only with a claim of title and ownership. Id. § 1356. The cases of Underwood v. Wolf, 131 Ill. 425, 23 N. E. 598, and Brown v. Foster, 108 N. Y. 387, 15 N. E. 608, and Vanderbilt v. Iron Works, 25 Wend. 665, are precisely in point. The learned counsel for appellants have cited and relied upon a class of cases concerning building contracts, which hold that the mere possession and use of a house constructed on one's own land will not, unattended by other circumstances, operate as a waiver of any conditions precedent in the contract under which it was constructed; and that a suit on the contract, for the contract price, may be successfully defended, notwithstanding such use and occupation, unless it is shown that the work was done in substantial compliance with the contract. The reason for distinguishing cases of that class from those concerning the sale or construction of machinery not so annexed to the soil as to pass with it is well stated in Smith v. Brady, 17 N. Y. 188, where Comstock, J., said:

"The owner of the soil is always in possession. The builder has a right to enter only for the special purpose of performing his contract. Each material, as it is placed in the work, becomes annexed to the soil, and thereby the property of the owner. The builder would have no right to remove the brick or stone or lumber after annexation, even if the employer should unjustifiably refuse to allow him to proceed with the work. The owner, from the nature and necessity of the case, takes the benefit of part performance, and therefore, by merely doing so, does not necessarily waive anything contained in the contract. To impute to him a voluntary waiver of conditions precedent from the mere use and occupation of the building erected, unattended by other circumstances, is unreasonable and illogical, because he is not in a situation to elect whether he will or will not accept the benefit of an imperfect performance."

In the case before us the machinery was capable of removal. It had not become annexed to the soil, and for that reason the property of the owner of the soil. That it was capable of removal is shown by the October letters notifying the seller to remove it, and there is no evidence in the case in any way indicating a situation analogous to that of one occupying a house not built according to an agreement. This acceptance, though having the effect to pass the title to the defendants and to cut off any right to rescind did not, under the circumstances, operate to cut off defendants from their right, when sued for the price, to set off or recover by cross petition any damage which they had sustained by the failure of the machinery to comply with the terms and conditions of the contract. Manufacturing Co. v. Phelps, 130 U. S. 525, 9 Sup. Ct. 601. In Vanderbilt v. Iron Works, heretofore cited, the question involved was a contract to equip a steamboat with an engine. In an action for the price, it was held that the acceptance of the engine, though deficient in some particulars, would prevent the buyer, in an action for the price, from insisting upon the defects as a nonperformance of the condition precedent; yet the

buyer was not cut off from showing such defects, and obtaining a reduction of the price, when sued for a balance due. The cases of Brown v. Foster and Underwood v. Wolf, heretofore cited, are also in point as to remedy of a buyer who has waived his right to reject in toto.

These conclusions operate to overrule defendants' assignments of error Nos. 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 17. Assignments Nos. 3, 4, and 16 were withdrawn on the argument.

The evidence that the power pump was omitted by consent, and that its value was $150, was quite conclusive. There was no error in the instruction to that effect, and the fourteenth assignment must be overruled.

The question as to whether the blue-print plans for the building and for the foundation for the freezing tank, as prepared by the plaintiff's draftsman, were sent to and received by defendants, was submitted to the jury. There was evidence sufficient to support a finding to that effect. The court construed those plans, in connection with the contract, as imposing on the defendants the duty of building a foundation of five or six walls under the compressor, and that the plans showed that between those walls there should be cinders close up to the floor above. He also charged that if the defendants failed to build the foundation and fill in with cinders, as they were obliged to do, any failure of proper insulation attributable to the failure to use cinders, as indicated on the blue-print plans, could not be charged to the plaintiff. We think there was no error in this, and the fifteenth assignment is therefore not well taken.

The defendants were given every opportunity to show, if they could, any defects in the machinery furnished, or any want of capacity to perform the work it had been warranted to do. The verdict can bear but one construction, which is that the machinery was in substantial accord with the contract, and that the defendants had sustained no damage by reason of any failure to perform the contract.

On the whole case, we are entirely satisfied with the result. The judgment must therefore be affirmed.