THOMAS CHINA CO. v. C. W. RAYMOND CO.

(Circuit Court of Appeals, Sixth Circuit. February 7, 1905.)

No. 1,342.

1. SALE—BREACH OF WARRANTY—REMEDY OF PURCHASER.

Where a purchaser of machinery which does not comply with the contract of sale retains and uses the same, he loses the right to rescind, and his only remedy is the recovery of damages for the breach of warranty, either by direct action, or by way of counterclaim in an action by the seller to recover the purchase price.

2. SAME—CONSTRUCTION OF CONTRACT.

In a contract for a sale of machinery, containing a general warranty of its fitness for the purpose intended, a further agreement by the seller to replace any part breaking from defective material or improper workmanship provides a cumulative remedy only, and, in case parts of the machinery prove defective or break, the purchaser has the right to remedy the defects, or procure new parts from other manufacturers, and recover the reasonable cost and expense thereof from the seller under his general warranty.

3. SAME—ACTION TO RECOVER PRICE—DEFENSES.

In an action for the price of machinery which has been accepted, retained, and used by the purchaser, it is not necessary to allege or prove compliance with a provision of the contract requiring the seller to submit

the drawings and plans to an agent of the purchaser for approval before the machinery was built.

**4. SAME—CONSTRUCTION OF CONTRACT.**

Where a contract to furnish for the equipment of a pottery "machinery as follows" enumerated among other articles kiln doors, such doors are "machinery," for the purposes of the contract, and of a requirement therein that the plans and drawings of the machines should be submitted to and approved by an agent of the purchaser before they were built; and the purchaser cannot complain that the doors made were too light or of improper design, where they were made in accordance with plans and drawings so approved.

**5. SAME—ACTION FOR PURCHASE PRICE—COUNTERCLAIM.**

Defendant, having contracted for certain machinery to be built by plaintiff, wrote for the blue prints showing the size and dimensions of the machines, from which to build the foundations, and they were furnished. *Held,* in an action to recover the purchase price, that defendant was entitled to plead and prove as a counterclaim that the machines sent did not correspond in dimensions to such blue prints, and that additional expense was incurred in rebuilding the foundations, providing it was shown that plaintiff knew the purpose for which the blue prints were wanted.

**6. APPEAL—REVERSAL—ERROR PREVENTING RECOVERY OF NOMINAL DAMAGES.**

A judgment is not reversible because of an erroneous construction of a contract by the court in its instructions, by which a party was denied the right to recover damages for a breach, where, under the evidence, only nominal damages would have been recoverable.

**7. SAME—REVIEW—OBJECTIONS TO EVIDENCE.**

To entitle a party to review a ruling overruling objections to the admission of evidence, the grounds of such objections must have been stated.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Billingsley, Clark & De Ford, for plaintiff in error.

Carr, Stearns & Chamberlain, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This is a suit brought by the defendant in error, by petition, to recover from the plaintiff in error the unpaid balance, amounting to $2,107, of the purchase price of certain machinery used in the manufacture of pottery. The answer admitted the contract of sale, but denied the performance of the conditions to be performed by the plaintiff in the court below, and a cross-petition was filed by the defendant in that court to establish a counterclaim against the plaintiff for damages alleged to have been sustained by the defendant in consequence of specified breaches of the contract by the plaintiff. By the verdict of the jury, the defendant appears to have established at the trial a counterclaim in the sum of $696.92, and the plaintiff to have established its claim to the unpaid balance of the purchase price stated in the contract, and the sum of $193.56 for extras, less the amount allowed upon the counterclaim. Judgment for the plaintiff was entered accordingly. The defendant, not being satisfied with this result, brings the case here, alleging errors in the rulings of the court upon the trial.

The stipulations of the contract upon which the main questions of the controversy arise are as follows:

"It is understood that your Mr. Harker will examine and O. K. the drawings of any of the machines we may submit to him before we build the same.

"Ship as required within ninety days.

"We guarantee the above machinery to be of modern design; to be constructed throughout of the best materials, and to be machine finished according to the very latest standard, with all parts made from jigs and templates and interchangeable, and all the important adjustment finished to micrometer sizes. We agree to replace f. o. b. cars, Dayton, Ohio, free of charge, any parts breaking from defective material or improper workmanship. We guarantee the above machinery to perform in a proper manner all of the duties that are customarily required of machines and machinery of this class and character and built for this purpose.

"All agreements are contingent upon strikes, accidents, delays of carriers and other causes beyond our control."

1. It is complained that the court instructed the jury that they might find a verdict for the balance appearing to be due upon the contract. It is apparent from an examination of the instructions that what the court meant was that the jury might take that as the starting point, for the court proceeds to state the conditions upon which the jury might allow the defendant reductions under its counterclaim. We see no objection to submitting the case in this way. The defendant had received and kept and used the machinery upon the footing of the contract, and had at no time claimed the right to rescind, or offered to return the machinery. The right to rescind had been lost by the defendant. The remedies of the buyer of machinery on a contract such as this, upon discovering its defects, were stated by Judge Lurton, in delivering the opinion of this court in Dodsworth v. Hercules Iron Works, 66 Fed. 483, 488, 13 C. C. A. 552, as follows:

"The first was to reject, and give notice of their determination to the vendor. This course, if adhered to, would have entitled them to sue for a return of purchase money, and such other damages as they had sustained by the failure of the vendor to furnish them the machinery according to the contract. If the machinery had not been removed by the plaintiff upon notice of rejection, then the defendants might have removed and stored it, subject to the risk of the seller, or, if suffered to remain, they might have recovered storage. The second remedy open to defendants was to accept the machinery and bring an action for breach of the warranty in the contract. The third remedy, having paid but part of the price, was to set off by way of counterclaim, when sued by the buyer for the balance due, the damages sustained by the failure of the machinery to comply with the contract. Benj. Sales (Corbin's Ed.) § 1348. The right of rejection was lost by the long-continued use of the machinery, which use was utterly inconsistent with a purpose to resort to the first remedy which was open to them, and consistent only with a claim of title and ownership. Id. § 1356."

And see Lyon v. Bertram, 20 How. 149, 15 L. Ed. 847; German Savings Inst. v. De La Vergne Refrig. Mach. Co., 70 Fed. 146, 17 C. C. A. 34. The third of these remedies is that pursued by the defendant in this action.

2. The court construed to the jury the above-stated stipulation in the guaranty of the plaintiff, "We agree to replace f. o. b. cars, Dayton, Ohio, free of charge, any parts breaking from defective material or improper workmanship," as intending to provide that

the only remedy the buyer should have in case of such breakage would be to notify the seller, and have it replaced by the latter; and the court put the matter in this way, as if it answered the claim of the defendant that certain articles furnished "were of such imperfect design, material, and construction as to be not only worthless, but dangerous." In this we think the court erred. To begin with, the defects complained of were other and larger than those covered by this limited stipulation relative to breakage. It was claimed that these articles were of faulty design, and that they were within the terms of the general guaranty contained in the following words:

"We guarantee the above machinery to perform in a proper manner all of the duties that are customarily required of machines and machinery of this class and character and built for this purpose."

The facts that the parts were broken and might be replaced would not, as the court seems to have supposed, have displaced the more fundamental grounds of objection. For broken parts might have been replaced without fulfilling the guaranty. Moreover, the court was in error in holding that the promise to replace broken parts bound the purchaser to resort to that means of remedy. The view generally taken of such a stipulation is that it is a cumulative promise, and gives the purchaser a special privilege in addition to such rights as he may have under the general warranty, which he may exercise, or not, as he may see fit. Douglass Axle Mfg. Co. v. Gardner, 10 Cush. 88; Seigworth v. Leffel et al., 76 Pa. 476; Park v. Richardson, 81 Wis. 399, 51 N. W. 572; McCormick v. Dunville, 36 Iowa, 645; Hefner v. Haynes (Iowa) 57 N. W. 421; 24 Ency. of Law (2d Ed.) 1158, 1159; Kemp v. Freeman, 42 Ill. App. 500; Moore v. Emerson, 63 Mo. App. 137.

It follows that the defendant, in case the parts of the machinery were broken or proved defective, might resort to other manufacturers to remedy the defects by supplying new parts. It might better fulfill its requirements in that way than by going back to the party who had originally furnished the defective machinery. Beyond doubt, it is ordinarily the right of a purchaser of warranted machinery which has been put into his works for continuous operation, but proves inadequate for use by reason of defects warranted against, to take any reasonably prudent and sufficient means to supply the defects; and, if he acts in good faith, he is entitled to charge the warrantor with the cost thereof. This rule applies to the case at bar. The defendant was therefore entitled to prove under the counterclaim that such defects appeared; that it took proper measures to remedy them, and at what fair cost. Benjamin v. Hillard, 23 How. 149, 16 L. Ed. 518; Marsh v. McPherson, 105 U. S. 709, 26 L. Ed. 1129; Bixby v. Normal School Association (Iowa, 1899) 98 N. W. 234; Wood's Mayne on Damages, 160; Cutler v. Close, 5 Car. & Payne, 337, per Tindal, C. J.

Such cases are illustrations of the general rule stated by the Lord Justices in the Court of Appeal. Le Blanche v. London & Northwestern Ry. Co., 1 Com. Pl. Div. 286. "I agree," said James, L. J., "that the general rule is that a person with whom a con-

tract has been broken has a right to fulfill that contract for himself as nearly as may be; but he cannot do this unreasonably or oppressively, as regards the other party, or extravagantly." To the same effect is the statement of Mellish, L. J. Bagallay, L. J., preferred the following statement:

"If the party bound to perform a contract does not perform it, the other party may do so for him as reasonably near as may be, and charge him for the reasonable expense incurred in so doing."

Probably there should be a proviso that the expenses be not greater than the loss which the party incurring them would otherwise incur, unless this proviso is implied in the language quoted.

3. It is contended that, as the petition states that the drawings and plans for the machinery were submitted to and approved by the defendant's agent Harker, and that this was not proved, the plaintiff could not recover. But this was an objection to receiving the machinery, and was not available in defense of a suit brought to recover the price of the property which had been received and used by the defendant. It was not material to be alleged, or, if alleged, to be proved.

4. It is further objected that the court erred in saying to the jury that if they found that the plans of the kiln doors, which were claimed to be defective, were approved by him (Harker), the defendant could not now complain that the doors were too light or were of improper design. This objection is supported by the contention that Harker was not the agent of the defendant, and, further, that the kiln doors were not a part of the machinery. But the proposition of the plaintiff which was accepted by the defendant states that "it is understood that your Mr. Harker will examine and O. K. the drawings of any of the machines we may submit him before we build the same"; and while it might be that, in the common meaning of the words, "kiln doors" would not be classed as "machinery," yet the contract in this case treats them as such. The proposition of the plaintiff was, "For and in consideration of the hereinafter-named amount, we propose to furnish you in good shipping order, machinery as follows: f. o. b., Lisbon, Ohio," and the kiln doors were enumerated thereunder. The court did not err in treating these facts as settled by the contract. So, in regard to the form and dimensions of the kiln doors, if the drawings thereof were submitted to and approved by Harker, and were constructed according to the drawings, the defendant cannot now be heard to complain.

5. The defendant offered to prove that while the plaintiff was getting the machinery ready the defendant was engaged in preparing the foundations for it, and sent to the plaintiff a request for blue prints describing the form and dimensions of the machinery; that the plaintiff sent them, and the defendant built the foundations of masonry corresponding therewith; that, with respect to some of the machines, they did not correspond with the blue prints, and it became necessary for the defendant to change the foundations to conform with the machines. This proof was rejected; the court being of opinion that the contract did not require

the plaintiff to furnish blue prints to the defendant, that they were for the use of its own workmen, and that, it being a matter independent of the contract, it was not a proper matter for a counterclaim in a suit upon the contract. But it was a matter arising during the execution of the contract, and intimately related to it. If the circumstances were such as to impose a legal liability upon the plaintiff for misleading the defendant to its prejudice, we think that, upon the broad principles on which the privilege of asserting a counterclaim rests, the defendant should have been permitted to prove this claim. The plaintiff raised no objection on legal grounds to this item of counterclaim, but in its reply denied the existence of it. It would seem the plaintiff must have known that the defendant would prepare the foundations for the machinery, and we think there was enough in the evidence from which the jury might reasonably have found that the plaintiff knew that the blue prints were wanted for that purpose. If the plaintiff had such knowledge, and furnished the blue prints to show the dimensions of the machinery it would put in, and the defendant relied upon being supplied with machinery of the dimensions specified, and was prejudiced by its not being of such dimensions, the plaintiff would be liable therefor. It amounted to a supplementary agreement on the part of the plaintiff by which the particular dimensions of the machinery which had not been expressly defined in the contract were made certain. If the plaintiff did not know, and is not chargeable with knowledge because he ought to have known, that the blue prints were requested for the purpose of enabling the defendant to properly construct the masonry, the result would be different. It would not be chargeable with consequences which it could not foresee. We are therefore of opinion that the evidence should have been received, and its bearing and limitations explained to the jury.

6. Damages were also claimed by the defendant upon the ground that the machinery was not shipped within the time agreed, which was within 90 days, "as required." The defendant called for the machinery July 23, 1901, which was 90 days after the date of the contract. But it was not all shipped until some time in October following. The court instructed the jury that this provision meant "as required" by the needs of the purchaser, and not as called for by it. We more than doubt whether this is the proper construction of that term of the contract. But as no competent evidence was given of the damages resulting from its nondelivery, the defendant was not entitled to recover any, and the error of the court proves harmless. Evidence was given that the plant cost $80,000, and that certain of the machines had a capacity for production stated. But these data were not sufficient to prove the rental value of the plant or of a machine, or the earning value of either. Counsel for defendant insists that it was entitled at least to nominal damages. But such a recovery would establish no right surviving the purposes of the suit—as, for instance, a right pertaining to the title to property—or determine a question of costs, and the claim to damages falls under the maxim, "De minimis non curat lex."

Haven v. Beilder Mfg. Co., 40 Mich. 286; Lewis v. Flint & P. M. R. Co., 56 Mich. 638, 23 N. W. 469, 13 Cyc. 20.

7. The plaintiff called as a witness one Jester, who testified that he was "erecting engineer" for the plaintiff; that he was a participant in the preparation of the contract, and knew what articles were delivered under it, and their qualities, dimensions, and the circumstances of their delivery and erection; that the machinery was built in conformity with the specifications of the contract; and that there was no "departure from the contract at all." Then, on cross-examination, he was asked whether, on an occasion identified as a visit to a machine shop, he did not say "to the man in charge that the machinery furnished to the Thomas China Company was too light." The question was objected to, but no ground for the objection was stated. The court sustained the objection, but did not assign its reasons. Counsel for defendant excepted to the ruling, stating that he expected the witness to answer in the affirmative. This ruling is now supported upon the grounds that the witness could not bind the plaintiff by such a declaration, and that it was not an impeaching question, because his testimony in chief related only to the conformity of the machinery with the specifications of the contract. It should be admitted that the supposed declaration would not bind the plaintiff, but the defendant contends the question was competent for the purpose of impeaching the witness. It is not clear whether the second question of counsel was intended to inquire whether the plaintiff had fully conformed to the contract, or only as regarded the specifications. If the latter, the court did not err. Error should clearly appear, in order to warrant a reversal of the judgment by reason of it, and upon this point there is no certain ground.

8. Counsel for the plaintiff proposed to the witness Schroll this question:

"State whether or not the machine which you finally delivered to the Thomas China Company was manufactured and turned out as quickly as it could be done in view of the strike?"

This was objected to, but no ground was stated for the objection. The objection was overruled, and the defendant excepted. The witness answered that it was. The matter was relevant to the issue, and, if counsel intended to save their objection, they were bound to assign their reasons for it, so that the court might pass upon them. This is the well-settled rule.

There are one or two minor questions raised, but not very clearly presented. As they may not arise upon another trial, we will pass them.

The judgment must be reversed, with costs, and with a direction to award a new trial.