CRESCENT MILLING CO. v. H. N. STRAIT MFG. CO.*

(Circuit Court of Appeals, Eighth Circuit. October 12, 1915.)

No. 4331.

1. APPEAL AND ERROR ☞889— REVIEW—THEORY OF CASE.

In an action on a contract for the sale of an engine, plaintiff served notice of a motion for an order permitting an amendment of the complaint to allege that defendant had retained and used the engine. Though this motion was not brought to the court's attention, and no order permitting an amendment was made, the trial court treated the complaint as amended in accordance with the notice, and evidence was received without objection to show defendant's use of the engine. *Held*, that the Circuit Court of Appeals would treat the complaint as so amended.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3621, 3622; Dec. Dig. ☞889.]

**2.** SALES ☜126— WARRANTIES—BREACH OF WARRANTY—OPERATION AND EFFECT.

A contract for the sale of an engine contained certain guaranties, and provided for an endurance test, by means of which the engine should be shown to possess the qualities specified, and that, if the engine did not fulfill the test or satisfy the guaranties, the purchaser should not be required to pay therefor, and the engine should be forthwith removed. The test left the question whether the engine fulfilled the guaranties in controversy, and the purchaser, though continuing to use the engine, refused to accept it or pay for it. In an action for the price, it insisted that the contract was executory, and that if the engine failed to fulfill the guaranties, it was not liable for the purchase price. *Held* that, while that might have been true at the time the pleadings were filed, the summons called upon the purchaser to decide whether it would reject the engine and demand its removal, or accept it and rely upon a recovery of damages for any breach of the contract, and its election to keep and use the engine caused title to pass to it, and from that time the guaranties ceased to be conditions precedent and became collateral agreements, for the breach of which the purchaser was confined to a recoupment of damages, as its conduct in continuing to use the engine was conclusive evidence that the engine was a substantial performance of the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 313–317; Dec. Dig. ☜126.]

**3.** APPEAL AND ERROR ☜999—REVIEW—QUESTIONS OF FACT.

The jury's refusal to allow the purchaser any damages by way of recoupment or on its counterclaims for expenses in testing the engine and for loss of profits through the engine's failure to furnish sufficient power was conclusive, so far as the Circuit Court of Appeals was concerned, that the seller substantially performed its contract.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3912–3921, 3923, 3924; Dec. Dig. ☜999.]

**4.** SALES ☜340—ACTIONS FOR PRICE—FORM.

Where, notwithstanding alleged breaches of guaranties of an engine which the contract of sale made conditions precedent to any liability for the price, the buyer elected to keep and use it, the seller could sue on the contract of sale, and was not required to proceed upon a quantum meruit.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 927–942; Dec. Dig. ☜340.]

**5.** SALES ☜439—ACTIONS—BREACH OF WARRANTY—BURDEN OF PROOF.

Where, in an action for the purchase price of an engine, though defendant failed to claim a recoupment of damages for breaches of guaranties by an affirmative defense, the court told the jury to reduce the recovery if they found the engine failed to fulfill the guaranties, it properly charged that the burden of proof rested on defendant to show that the engine failed to fulfill such guaranties.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1258–1260; Dec. Dig. ☜439.]

**6.** SALES ☜437—ACTIONS—PLEADING—ISSUES.

In an action for the purchase price of an engine, the answer denied performance of the contract of sale by plaintiff, and alleged specifically the particulars wherein the engine failed to comply with the conditions and guaranties specified in the contract, but did not make the breach of the guaranties the basis of any claim for damages. *Held*, that the court might properly have entirely disregarded the defense of recoupment in its instructions.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1248–1257; Dec. Dig. ☜437.]

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. APPEAL AND ERROR ⬤➡977—REVIEW—DENIAL OF NEW TRIAL.

The action of the trial court in refusing a new trial cannot be reviewed by the Circuit Court of Appeals.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3860–3865; Dec. Dig. ⬤➡977.]

8. TRIAL ⬤➡349—SPECIAL ISSUES—DISCRETION AS TO SUBMISSION.

The refusal of the trial court to submit to the jury a long list of questions, as requested, was a matter within its discretion.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 823–827; Dec. Dig. ⬤➡349.]

9. SALES ⬤➡440—WARRANTIES—BREACH—EVIDENCE.

In an action for the purchase price of a gas engine, indicator cards taken from the engine by a standard appliance, designed to show its indicated horse power, were admissible to show that the engine fulfilled the guaranties as to its horse power; their probative force being a question for the jury.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1261–1276; Dec. Dig. ⬤➡440.]

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Action by the H. N. Strait Manufacturing Company against the Crescent Milling Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Harris Richardson, of St. Paul, Minn. (Walter Richardson, of St. Paul, Minn., on the brief), for plaintiff in error.

J. O. P. Wheelwright, of Minneapolis, Minn. (Albert C. Cobb and John I. Dille, both of Minneapolis, Minn., on the brief), for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. The Strait Manufacturing Company was plaintiff below. It brought this action against the Crescent Milling Company to recover the purchase price of an engine. The contract was in writing, and took the form of a proposal from the Manufacturing Company, and an acceptance by the Milling Company. It binds the plaintiff to supply and install in the defendant's mill at Fairfax, Minn., a 300 indicated horse power horizontal tandem double acting gas engine, which engine is to operate the flouring mill of the purchaser, and the lighting plant of the village, and, at 150 revolutions per minute, carry a load of 200 brake horse power, and a peak load of 264 horse power. The contract also contains numerous guaranties as to the amount of power which the engine will develop by the use of specified British thermal units of heat. While these qualities are sometimes spoken of as guaranties in the contract, they are by its express provision made conditions precedent to any liability on the part of the purchaser to accept or pay for the engine. We quote from the contract the following language:

"In case said engine does not fulfill said test or satisfy said guaranties, said purchaser shall not be required to pay therefor, and said engine shall be forthwith removed by said corporation upon demand."

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The contract provides for a 60-day endurance test by means of which the engine should be shown to possess the qualities specified in the contract. The engine was installed, and its use in defendant's mill commenced on the 8th day of March, 1912. For various causes, partly due to the engine, and partly due to the fact that defendant found it necessary to put in new transmission machinery in its milling plant, the 60-day test was not commenced until July 25th. The engine, however, was run a large part of the time between its installation and that date. The endurance test extended from July 25th to September 23d. The result left the question whether the engine fulfilled the guaranties of the contract in controversy. Considerable trouble was experienced during the period. Plaintiff insisted that this was due to the quality of the gas furnished by defendant. Defendant insisted that it was due to defects in the engine. Plaintiff requested defendant to accept the engine and make the first payment at the conclusion of this test, in accordance with the terms of the contract. This defendant refused to do. The parties separated with the understanding that defendant should go on using the engine, and that plaintiff should supply some minor parts, which it was hoped would remedy the defects complained of by defendant. The correspondence continued for some three months—plaintiff urging an acceptance of the engine and a settlement; defendant continuing to use the engine, but refusing to accept or pay for it.

[1] The complaint is based upon the contract, which is set forth in full as an exhibit. It alleges that the engine was supplied by the plaintiff, installed, and tested, and that it fulfilled all the conditions of the contract. It contained no allegation on the subject of acceptance of the engine by defendant, or of a waiver of any of the conditions specified in the contract. The answer denies performance of the contract by plaintiff, and alleges specifically the particulars wherein the engine failed to comply with the conditions and guaranties specified in the contract. No issue is raised on these guaranties by the answer, save only a failure of the plaintiff to perform its contract. The breach of the guaranties is not made the basis of any claim of damages upon the ground that the engine furnished is less valuable than the one contracted for. The answer, however, does set up by way of counterclaim two grounds of recovery: First, expenses incurred by the defendant in testing the engine; second, loss of profits in defendant's milling and electric lighting operations by reason of the failure of the engine to furnish necessary power. On the 31st of March, 1913, counsel for plaintiff served upon defendant notice that at the trial of the action it would apply to the court for an order permitting an amendment of the complaint, adding the following allegation:

"That at all times since the completion of said endurance test, the defendant has continuously retained and used said engine."

So far as we can discover from the record this motion was never brought to the notice of the court, or any order made permitting the amendment. Evidence, however, was received at the trial, without objection, showing that defendant had continuously used the engine in its mill, without any notice other than the answer, of its dissatisfac-

tion, or any demand upon plaintiff to remove the same from defendant's premises. The trial commenced April. 21, 1913. On the 7th day of May, while the trial was still progressing, defendant notified the plaintiff in writing to remove the engine from its plant. The trial court dealt with the case as if the complaint had been actually amended in accordance with the notice, and we think we must treat it in the same way. The trial resulted in a judgment in favor of plaintiff for the full purchase price. Defendant brings error.

[2-4] The trial court submitted to the jury the question as to whether defendant had, by its continued use of the engine, accepted it, and instructed the jury that if they found such acceptance they should then return a verdict in favor of plaintiff, less any reduction in the value of the engine due to its failure to fulfill the guaranties, and also less any damages allowed in respect of the counterclaims. Defendant insisted throughout the trial that the contract was still executory, that no title to the engine had passed, and that defendant could not be held liable for any part of the purchase price if the engine failed to fulfill any of the guaranties. It made numerous requests that the case be submitted to the jury upon this theory, and took numerous exceptions challenging the charge of the court submitting the case to the jury in the manner above explained. All the important assignments of error rest upon this theory of the defense. If the theory is wrong, the assignments of error fail. We think the theory is wrong. At the time the original pleadings were drawn, it is possible that defendant might have stood upon such a theory. But when the summons was served it was a call to defendant, not only to answer the complaint, but to decide what it would do with respect to the engine—whether it would reject it and demand its removal from its premises, or accept it, continue to use it, and rely upon a recovery of damages for any breach of the contract. It could not take both positions. It decided to keep the engine and use it. That election caused the title to pass to defendant. From that time forward the provisions of the contract ceased to be conditions precedent, and became collateral agreements. When the action was brought, defendant had already had a long experience with the engine. It had been in operation in its plant for nearly nine months. It had been subjected to an endurance test. As the result of that experience, defendant knew its qualities. There was no evidence at the trial tending to show that anything of importance in regard to the engine was discovered after the action was brought. So when defendant continued to use it during the months that the action was pending, its conduct affords conclusive evidence that the engine was a "substantial performance" of the contract within the meaning of that term as used by this court in City of St. Charles v. Stookey, 154 Fed. 772, 85 C. C. A. 494, and the long list of earlier cases there referred to. See particularly German Savings Institution v. De La Vergne Refrigerating Mach. Co., 70 Fed. 146, 17 C. C. A. 34; Springfield Milling Co. v. Barnard Leas Manufacturing Co., 81 Fed. 261, 26 C. C. A. 389; Dodsworth et al. v. Hercules Iron Works, 66 Fed. 483, 13 C. C. A. 552.

This inference from defendant's conduct is in accord with the weight of evidence as to the actual working of the engine. The refusal of the jury to allow defendant any damages either by way of recoupment or on its counterclaims, all of which involved the question whether the engine fulfilled the guaranties, establishes, so far as this court is concerned, that plaintiff substantially performed its contract. For the reasons clearly set forth in the decisions referred to, defendant could no longer treat the terms of the contract as conditions precedent to a recovery of the purchase price. It was confined to a recoupment of damages for any failure of the engine to completely fulfill the guaranties upon which it was sold. Such being the case, the charge of the court was more favorable to defendant than it was entitled to, for the reason that the answer did not contain any affirmative defense asking for damages upon the ground that the engine furnished was of less value than the engine agreed to be furnished. The charge of the court, however, permitted the jury to reduce the recovery in case they found that the engine sold was less valuable than it should have been under the contract. Under our decision in City of St. Charles v. Stookey, 154 Fed. 772, 85 C. C. A. 494, it was not necessary for the complaint to proceed upon quantum meruit, or contain a count of that character. It was properly based upon the contract.

[5, 6] Defendant assigns error because the court charged the jury that the burden of proof was upon defendant to show that the engine failed to fulfill the guaranties. The charge was right. Under the case made by the evidence, it was the duty of the defendant to claim its recoupment of damages by an affirmative defense, and the burden rested upon it to establish such defense. The court directed the jury to reduce the recovery in case they found that the engine sold did not fulfill the contract. It did this, although the answer failed to assert such a defense. In permitting the defense, however, the court very properly placed the burden of proof where it would have rested if the defense had been set up in the answer. The court might properly have disallowed this defense entirely, as was done under a similar answer in Dodsworth et al. v. Hercules Iron Works, 66 Fed. 483, 13 C. C. A. 552. In allowing the jury to consider that subject, the charge was more favorable to the defendant than it was entitled to.

[7] We are asked to review the action of the trial court in refusing a new trial. We have so frequently explained that that cannot be done that we can only express surprise that able and experienced counsel continue to make the request.

[8] Counsel for defendant asked the trial court to submit a long list of questions to the jury, and assigns error on the refusal. This was clearly a matter of discretion, W. B. Grimes Drygoods Company v. Malcolm, 164 U. S. 483, 17 Sup. Ct. 158, 41 L. Ed. 524, and the discretion was not abused.

[9] The plaintiff sought to prove that the engine fulfilled the guaranties by the use of indicator cards taken from the engine by a standard appliance designed to show its indicated horse power. It was seriously urged by defendant that these cards were not competent evi-

dence, and had no probative force. We think they were properly received, and that their probative force was a question for the jury.

There are 121 assignments of error. We have examined them all, and are of the opinion that none of them are more meritorious than the ones to which we have already referred.

The judgment is affirmed.