SKINNER MANUFACTURING COMPANY, APPELLANT, V. CARRIER ENGINEERING CORPORATION, APPELLEE.

FILED APRIL 16, 1925. No. 23046.

1. **Sales: ACCEPTANCE.** Where a purchaser of warranted machinery asks for and is given a definite, reasonable time in which to make a full, fair test thereof to enable him to determine whether the machinery is satisfactory and complies with the warranty and who does make a full, fair test for the specified time, and thereafter, without objection or complaint, continues to use the machinery, he will, ordinarily, be deemed to have accepted it.

2. ——: ——: **LIABILITY.** A purchaser of warranted machinery who accepts it, after a full, fair trial thereof, thereby renders himself liable for its fair and reasonable value, in the absence of an agreement as to the purchase price.

3. **Appeal: INSTRUCTIONS.** The giving of an erroneous instruction is not ground for reversal, unless prejudicial to the complaining party.

APPEAL from the district court for Douglas county: L. B. DAY, JUDGE. *Affirmed.*

*Kennedy, Holland, DeLacy & McLaughlin,* for appellant.

*Mitchell & Staples* and *Gaines, Van Orsdel & Gaines,* contra.

Heard before MORRISSEY, C. J., ROSE, GOOD and EVANS, JJ., REDICK and SHEPHERD, District Judges.

Good, J.

Skinner Manufacturing Company, plaintiff, brought this action against Carrier Engineering Corporation, defendant, to recover the amount paid by plaintiff to defendant on a written contract for the installation, in plaintiff's macaroni factory, of a system for drying macaroni and kindred products; also to recover the cost of removal of the machinery and equipment from its factory, expense of storage, and for damages for macaroni spoiled in the process of testing the machinery.

A copy of the contract is made a part of the petition, and among other things provides: That defendant shall install, on the fourth floor of plaintiff's factory in Omaha, a system for drying macaroni and kindred products; warrants that the machinery, when installed, will handle and thoroughly and uniformly dry 40,000 pounds of macaroni and kindred products within 24 hours, the finished product to be free from checks, cracks, splits and molds. It further provides that, in the event the system installed fails to meet the contract requirements, the defendant shall remove the machinery and appliances at its own expense and restore plaintiff's building as nearly as possible to its original condition, and that defendant shall return to plaintiff any sums that have been paid on the purchase price of the machinery.

Plaintiff alleges that the machinery installed failed to meet the requirements of the contract; that, although requested so to do, defendant failed to remove the machinery from the manufacturing plant, and that it was removed by plaintiff at its own cost. Plaintiff also alleges that it has paid to defendant $13,936.23 on the purchase price of the machinery; that it has sustained damages in the cost of its removal and storage, also for macaroni spoiled in the process of testing the drying system, and prays for judgment in the aggregate sum of $49,544.45.

Defendant in its answer admits the making of the contract; the installation of the machinery; that it failed to meet the contract requirements to dry 40,000 pounds of

macaroni in 24 hours, and that $13,936.23 has been paid on the purchase price, but alleges that the machinery would properly dry the required amount of macaroni within a period of 48 hours; that the contract was then modified so as to provide that plaintiff would waive the time limit of 40,000 pounds within 24 hours, and accept the plant, provided defendant would install cams on the machinery, said cams, so requested, not being called for by the plans and specifications, and provided further that plaintiff be given an opportunity of testing the same for a period of 60 days; that, in reliance upon the contract as modified, defendant added to the plant the cams at a cost of approximately $2,000, and delivered the completed plant to plaintiff on October 1, 1919, for the purpose of permitting plaintiff to test the same and to determine whether or not the conditions of the contract, as modified, were complied with; that such test was made during the period of time from October 1, 1919, to December 1, 1919, when the completed plant was turned over and accepted by the plaintiff. Defendant further alleges that during all of said time the plant and equipment complied with each and every condition called for by the contract, as modified; that after plaintiff accepted such plant, on December 1, 1919, it continued to use and operate the machinery for its business, without any demand, request or complaint of any kind or character, until March 1, 1921; that plaintiff knew the kind and character of the product produced by the machinery, and that it had continued to use the same from the 1st of October, 1919, down to the time of bringing the action, and that it is thereby estopped from claiming that the machinery does not comply with all the terms and conditions of the contract.

Defendant filed a counterclaim for the reasonable value of the machinery, which it alleges to be in excess of $41,000, and asks for judgment therefor, less the amount that has been paid on the purchase price.

Plaintiff in its reply denies that the written contract was modified as alleged by defendant, and further alleges

that in the early part of 1919 the defendant admitted that it was unable to fulfil its written contract, and requested permission to endeavor to so arrange the machinery and appliances, to see if it could accomplish the drying of 40,-000 pounds of macaroni within a 48-hour period, with the purpose of then seeing if the system, so arranged, would be desired by plaintiff, and, if so, on what basis, and alleges that defendant failed in its efforts to make the system properly dry 40,000 pounds of macaroni within the 48-hour period, and that after defendant had ceased work upon its system plaintiff made every reasonable effort to test out the system, to see if it would uniformly dry 40,000 pounds of macaroni within the 48-hour period, and that the result of such test proved that the machinery could not and did not properly dry that amount of macaroni within the 48-hour period. A trial of the issues to a jury resulted adversely to plaintiff and in a verdict and judgment thereon for defendant on its counterclaim in the sum of $20,000. Plaintiff appeals.

There are numerous assignments of error, but the only ones argued and relied upon are that the verdict is not supported by the evidence and is contrary to law; error in giving certain instructions, and error in excluding certain exhibits offered in evidence by plaintiff.

As to many of the facts in issue, the evidence is in sharp conflict. Plaintiff's evidence tends to show that it thoroughly tried and tested the machinery, and that at no time would it properly dry 40,000 pounds of macaroni in 24 hours, or even in 48 hours, and that a large percentage of the product checked and cracked to such an extent that it was unfit for market; that, after thorough trial and testing, plaintiff requested defendant to remove the machinery from the factory; that defendant failed so to do, and thereupon plaintiff removed the machinery at its own expense. The evidence tends to show that a very large amount of the product that was attempted to be dried by the machinery and equipment, installed by defendant, checked and

cracked so that it was unmarketable and, as a consequence, plaintiff sustained great damage.

It is conceded by defendant that it was unable to make the machinery properly dry the macaroni within the 24-hour period, but its evidence tends very strongly to show that it was able to and did properly dry the required amount of macaroni in 48 hours; that this product was used and marketed by the plaintiff, and that only a small amount of dried product was unfit for use, but that some macaroni was spoiled while defendant was endeavoring to make the plant operate on a 24-hour basis, and that plaintiff was allowed credit for the spoiled product, in accordance with statements of the amount thereof rendered by plaintiff. Defendant's evidence further tends strongly to show that in the early part of 1919 there was a modification of the contract, substantially as alleged by defendant; that defendant agreed to install the cams, and that after they were installed the plaintiff should be allowed 60 days in which to test the system with its own employees, to ascertain if it would operate satisfactorily on the 48-hour basis, and, if so, that the price should be thereafter agreed to by the parties; that the cams were installed on the machinery, and that the system was turned over to plaintiff on the 1st of October, 1919, for the 60-day test by plaintiff with its own operatives, at the end of which time plaintiff was to determine whether or not it would keep the plant. Defendant called a number of persons, who were employed by plaintiff at the time of making the test and subsequent thereto, and their evidence is to the effect that during all the 60-day test and for a long time thereafter the drying apparatus was used continuously; that it would properly dry 40,000 pounds of macaroni in 48 hours; that the product was of high quality, free from checks, cracks, splits and molds. The evidence further tends to show that shortly after the expiration of the 60-day test plaintiff's manager or superintendent stated that the test had been satisfactory.

On December 10, 1919, defendant sent to plaintiff a bill for the machinery, allowing credit for the amount pre-

viously paid, and also credit for spoiled macaroni and other items, aggregating $1,503.97, and claiming a balance due of $19,896.03. On several occasions thereafter defendant requested plaintiff to state definitely whether or not it desired to accept the drying apparatus, but plaintiff neglected and failed to give any answer, except that in one letter it stated that the damage it had sustained was greater than the value of the plant, and that it would prepare and forward a statement of the damage sustained. The evidence further shows that for a period of 15 months after the expiration of the test the plaintiff, for a greater part of the time, used and operated the drying system successfully and satisfactorily. Finally, on the 31st of March, 1921, plaintiff wrote defendant, stating that the drying apparatus was unsatisfactory and demanding its removal from its factory. The evidence tends to show that, even after this, some parts of the machinery were used and that some of the appliances were being used at the time of the trial in the district court. The evidence also tends to show that the reasonable value of the machinery installed is in excess of $40,000, and that, after allowing plaintiff credit for payments made and for damage sustained on account of spoiled macaroni, as per the statements it had rendered to defendant, there was a balance due defendant, exclusive of interest, of approximately $20,000.

The issues of fact as presented by the evidence were submitted to the jury, and its verdict, based on conflicting evidence, is conclusive.

Plaintiff argues that, even if it retained the machinery in its factory after the expiration of the specified time for testing and using it in making further tests, this fact would not constitute an acceptance. Had the contract remained unmodified, the argument would be persuasive. Under the contract as modified, plaintiff was given a reasonable and definite time in which to fully and fairly test the machinery with its own operatives. This was in addition to the tests that had been made in its factory by the defendant and of which it had full knowledge. If it desired additional

time and opportunity to further test the machinery before accepting it, it should have asked and obtained leave so to do. No such request was made. Under the terms of the contract as modified, it was plaintiff's duty, at the end of the 60-day test, to determine whether it desired to keep the machinery. If it did not so desire, it should have then given notice to defendant. Instead, without complaint and without objection, it continued to use and operate the machinery, and this in the face of repeated demands by defendant that plaintiff signify whether it desired to accept the machinery.

Where a purchaser of warranted machinery asks for and is given a definite, reasonable time in which to make a full, fair test thereof, to enable him to determine whether the machinery is satisfactory and complies with the warranty, and who does make a full fair test for the specified time, and thereafter, without objection or complaint, continues to use the machinery, he will, ordinarily, be deemed to have accepted it. A purchaser of warranted machinery who accepts it, after a full, fair trial thereof, thereby renders himself liable for its fair and reasonable value, in the absence of an agreement as to the purchase price.

The rule here announced is, in a general way, supported by the following authorities: *McCormick Harvesting Machine Co. v. Martin,* 32 Neb. 723; *Hercules Iron Works v. Dodsworth,* 57 Fed. 556, on appeal *Dodsworth v. Hercules Iron Works,* 66 Fed. 483; *Brown v. Foster,* 108 N. Y. 387; *Barber Mining & Fertilizing Co. v. Brown Hoisting Machinery Co.,* 258 Fed 1; *Crescent Milling Co. v. Strait Mfg. Co.* 227 Fed. 804; *Thomas China Co. v. C. W. Raymond Co.,* 135 Fed. 25; *Chambers v. Lancaster,* 160 N. Y. 342.

Plaintiff complains of certain instructions given the jury. One of them apparently imposes on plaintiff the burden of proving the modification of the written contract. This modification was pleaded by defendant and denied by plaintiff in its reply. The burden of establishing it, therefore, rested on defendant. However, the overwhelming weight of the evidence shows that the contract was modified, and

plaintiff's own evidence and written admissions in letters practically concede that it was modified. While the instruction was technically erroneous, it was harmless error. The giving of an erroneous but harmless instruction is not ground for reversal. *Phelps v. Williams*, 112 Neb. 667. Plaintiff insists that another instruction gives a wrong impression to the jury. Its criticism, however, is based on taking a single sentence from the instruction. Taken as a whole, the instruction does not at all convey the meaning attributed to it by plaintiff. The third instruction of which complaint is made conforms to the rules announced in this opinion, and we think was properly applicable to the evidence.

Complaint is made of certain rulings of the court excluding three exhibits, offered in evidence by plaintiff. We have examined these exhibits and in our opinion they have no bearing upon any of the issues involved. They tend neither to support nor to controvert any issue presented. There was no error in their exclusion.

We find no prejudicial error in the record. The judgment of the district court is

AFFIRMED.

Note—See Sales, 35 Cyc. 432, 580.