(48 Misc. Rep. 411.)

### B. P. DUCAS CO. v. AMERICAN SILK DYEING & FINISHING CO.

(Supreme Court, Appellate Term. November 3, 1905.)

1. SALES—COUNTERCLAIM FOR BREACH OF WARRANTY.

A counterclaim by a buyer, alleging that the articles were furnished for a specified use and purpose, which was known to the seller when making the sale, and that the sale was made on special solicitation by the agent of the seller, on the representation and warranty that the article so sold was adapted for the said use and purpose, and that in purchasing the goods from plaintiff the defendant relied on such representations and warranty, set up only an express warranty.

2. SAME—IMPLIED WARRANTY—KNOWLEDGE OF DEFECTS.

Where it appears that the seller of goods did not manufacture, but merely imported, the articles, the presumed knowledge of latent defects is not to be inferred.

3. SAME—WAIVER OF BREACH.

A purchaser of an article sold under warranty of fitness for the purpose intended was not justified, after demonstration of its unfitness, in not only using up what he had first bought, but in going on buying and using the same article indefinitely, and by so doing he waived the warranty.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, § 818.]

Appeal from City Court of New York, Trial Term.

Action by the B. P. Ducas Company against the American Silk Dyeing & Finishing Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before SCOTT, P. J., and BISCHOFF and FITZGERALD, JJ.

Preston Stevenson, for appellant.

Guggenheimer, Untermyer & Marshall (Abraham Benedict and Norvin R. Lindheim, of counsel), for respondent.

SCOTT, P. J. In this action the plaintiff seeks to recover, and has obtained a judgment for certain balances of interest upon sales made to defendant under an alleged express agreement that, if plaintiff's bills were not paid within 30 days, the interest thereon should be computed annually and paid by defendant. The making of the special agreement was denied, but the jury found, upon satisfactory evidence, in plaintiff's favor upon this issue, and we find no reason for disagreeing with the result thus arrived at. No question of law is involved in the appeal, so far as the plaintiff's right to recover upon the cause of action stated in the complaint.

The defendant's chief cause of complaint on this appeal concerns its failure to prevail upon a counterclaim set up by the answer. The defendant is engaged in the business of dyeing silks and other dress fabrics, in the course of which it uses certain dyestuffs and chemicals, together with a manufactured article known as "dextrine." Prior to the year 1900 the defendant had been in the habit of purchasing and using an article of dextrine known as the "Eagle" brand, imported from Germany and sold by a certain firm in this city, who were the agents for the manufacturers. It was alleged in the answer that a large quantity of an article called "dextrine" was sold to defendant by plaintiff, as a manufacturer and importer, for a specified use and purpose, in which

defendant was then and is now engaged, viz., the dyeing and printing and finishing of silk goods; that the said process, and the use therein of said article by defendant, and the factory and place of manufacture of the dextrine then in use by the defendant for the purpose aforesaid (meaning the Eagle brand), were known at the time of such sales to the officer and agent of plaintiff who made the sales to the defendant, and such sales were so made upon special solicitation of the defendant by such officer and agent of plaintiff, upon the representation and warranty by him that the said article so sold was and would always be the same, as to the factory and place of manufacture in Europe from which it came and as to its quality, as the article by that name then being used by defendant for the purpose aforesaid, and that the same would be fit and adapted for the aforesaid use and purpose in manufacture by the defendant, and would be the same for such use and purpose as said article of dextrine which was then being used by the defendant; and that in purchasing the goods from plaintiff defendant relied upon said representations and warranty. Then follow allegations that the dextrine purchased from plaintiff was not the same or equal to that previously used by defendant, but was greatly inferior thereto, and was not fit for the purpose for which it was bought, and that its use by defendant had been the cause of much imperfection and bad work, to defendant's damage.

It will be seen at once that this answer alleges an express warranty on plaintiff's part, and the cause was tried upon the theory that only an express warranty was set up. Upon the question whether or not there was an express warranty the evidence was conflicting, and the issue was found adversely to the defendant. No substantial error is assigned in so far as concerns the trial and submission of this issue. The defendant, however, claims, and claimed upon the trial, that its answer set up, not only an express warranty, but an implied warranty as well, and sought to have the jury instructed that there was involved in the sale an implied warranty of fitness for the particular use to which defendant proposed to put the dextrine. There is no doubt that the answer sets up an express warranty and its breach; but we do not consider that it can be said to plead, by any fair intendment, such an implied warranty as the defendant now seeks to read into it, nor do we find in the pleading and proof, when read together, any foundation for the implication of a warranty of fitness. It is true that a pleader who alleges generally a warranty need not aver whether it was express or implied (Rogers v. Beckrich, 46 App. Div. 429, 61 N. Y. Supp. 725); but here the defendant did not content himself with so pleading. He distinctly alleged an express warranty, which by his bill of particulars he declared had been orally made by one of plaintiff's officers. If it was orally made, it certainly was not implied. If his position now is that he pleaded both an express and an implied warranty, the answer is that his pleading does not so read. It is true that it is alleged that the dextrine was furnished for a specified use and purpose in connection with a certain process, and that the process and the use of the dextrine in it were known to plaintiff; but these allegations are all pleaded as leading up to and the inducement for the express warranty which is alleged in the same sentence.

Furthermore, although the complaint alleges that the plaintiff furnished the dextrine both as a manufacturer and an importer, the evidence was that it did not manufacture, but merely imported, the article, from which a presumed knowledge of latent defects is not to be inferred.

But, whether the defendant was entitled to rely upon an express or an implied warranty, or both, we are of the opinion that it must be held to have waived the warranty. It may, and indeed must, be conceded that, if there was any warranty at all, it was one which survived acceptance, because, from the nature of the article and the use for which it was intended, its unfitness for defendant's purposes was not ascertainable upon inspection, but could only be ascertained after either a special test or actual use. Therefore, assuming that there was a warranty of fitness, either express or implied, the defendant was justified in accepting and using the "dextrine" sold by plaintiff until its unfitness had been demonstrated. But it was not justified, after such demonstration, in not only using up what it had first bought, but in going on buying and using the article indefinitely, and thus piling up a claim for damages against the plaintiff. It appeared that the alleged unfitness of the dextrine sold by plaintiff disclosed itself early in the year 1900, and that allowances were made to customers for spoiled work as early as March in that year, yet that in August, 1901, a large order was given, three-fifths of which was delivered and accepted, and the order for the remaining two-fifths was not canceled until February, 1902.

Upon the whole case we are satisfied that the judgment was right, and it must be affirmed, with costs. All concur.

Argued before SCOTT, P. J., and BISCHOFF and FITZGERALD, JJ.