SAVERY HOTEL CO. v. UNDER-FEED STOKER CO. OF AMERICA.

(Circuit Court of Appeals, Eighth Circuit. April 11, 1910.)

No. 3,039.

1. SALES (§ 266*)—CONTRACT TO FURNISH MECHANICAL APPLIANCES—IMPLIED WARRANTY OF EFFICIENCY.

In a contract to furnish mechanical stokers for feeding the furnaces under the boilers in use in defendant's hotel to furnish heat, light, and power, there was no implied warranty of the efficiency of the plant as an entirety as supplemented by the stokers, as no warranty of efficiency could be implied beyond that of the stokers themselves to do their part of the work.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 743–762; Dec. Dig. § 266.*]

2. SALES (§ 262*)—WARRANTY OF EFFICIENCY—TESTS.

In a contract by plaintiff to furnish mechanical stokers to be used in connection with the heating plant already in use in defendant's hotel, in making express warranties that the use of the stokers would effect a saving of a certain per cent. in fuel, and increase the capacity of the boilers a certain per cent., to be determined by tests, plaintiff had the right to assume that the boilers were in a reasonably safe and suitable condition for use, and it was not bound to make such tests where, owing to the defective condition of the flues of the boilers, not apparent to ordinary external inspection, their capacity was greatly below the normal, and they were in fact dangerous to use.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 736–739; Dec. Dig. § 262.*]

3. SALES (§ 358*)—ACTION FOR PRICE—EVIDENCE.

In an action to recover the price of mechanical stokers sold by plaintiff to defendant, where defendant claimed that they were not adapted to use the coal contemplated by the contract, it was competent for plaintiff to show that in other places they were successfully operated with the same kind of coal.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1049–1055; Dec. Dig. § 358.*]

In Error to the Circuit Court of the United States for the Southern District of Iowa.

Action by the Under-Feed Stoker Company of America against the Savery Hotel Company. Judgment for plaintiff, and defendant brings error. Affirmed.

James P. Hewitt, for plaintiff in error.

Nathaniel T. Guernsey (William E. Miller, on the brief), for defendant in error.

Before HOOK and ADAMS, Circuit Judges, and AMIDON, District Judge.

HOOK, Circuit Judge. This was an action by the Under-Feed Stoker Company of America against the Savery Hotel Company, of Des Moines, Iowa, for the contract price of four under-feed stokers installed in the boiler room of defendant's hotel. The stoker is an appliance for the mechanical feeding of coal into the furnace or fire box of a boiler, and it supplants the ordinary grate, and dispenses

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

with the manual shoveling of coal through the furnace door. The coal is fed to the fire from below, instead of from above, as in the old way, and the gases, liberated by the heat and intermixed with air mechanically supplied, pass upward through the fire and are consumed. There were two small boilers and one large one in the hotel. Each of the former was equipped with a stoker, and the large one by two. By the contract, which was in writing, the plaintiff expressly warranted that the stokers would effect a saving in fuel bills of not less than 10 per cent. as compared with the results of hand firing on common grates, and that the capacity of the large boiler would be increased at least 25 per cent. beyond a stated rating. Tests were to be made, if requested by defendant, and it was to accept the equipment upon completion of the installation and the fulfillment of the warranties, and pay the price in fixed installments.

The defenses were breaches of the express warranties, and also of a warranty, claimed to be implied, that the stokers were reasonably fit for the purpose intended, to wit, sufficiency as applied to defend-ant's entire plant and hotel property; and, failing in those respects, defendant removed them, and the contract price never became due and owing. There was also a counterclaim by defendant for expenditures in connection with the installation. The plaintiff replied that satis-factory tests were impossible because of the defective condition of the boilers, and that the failure of the stokers, if there was one, was the fault of the defendant. There was a verdict and judgment for plain-tiff, and defendant prosecuted this writ of error.

Complaint is made that the trial court rejected defendant's claim of an implied warranty. We think the court was right. The question is simplified by the fact that defendant does not claim there were struc-tural defects in the stokers, nor that, considered by themselves, they were unfit for the use for which they were designed. On the contrary, any contention that they were not meritorious, or that they could not be made to work properly and produce satisfactory results when in-stalled under proper conditions, was expressly disclaimed. But it is said they did not do the work intended when installed in defendant's plant. This brings in question the express warranties of economy in fuel and of increased capacity of the large boiler; but defendant goes much further, and attempts to extend the scope of plaintiff's under-taking to an implied guaranty of the sufficiency of all its machinery of various kinds designed for furnishing heat, light, and power for its hotel, when supplemented by the stokers. Obviously that cannot be. There is nothing in the contract or in the relations of the parties from which it could reasonably be implied. The plaintiff contracted, not to overhaul the entire mechanical plant of the hotel, but merely to furnish and install subordinate and auxiliary appliances under lim-ited specific guaranties. It was not concerned with the question of the previous adequacy of the plant as an entirety. Whether the plant as an entirety was or was not sufficient for all needs of the hotel after the installation of the stokers depended on many things wholly discon-nected from the operation of those particular appliances. Plaintiff expressly warranted a certain economy in fuel and a certain increase in boiler capacity, and nothing more. If the defendant desired the

extension of the warranties to the efficiency of the entire plant when supplemented by the stokers, it should have so provided in the contract. That such was the intent of defendant does not suffice. The case is much like Seitz v. Brewers' Refrigerating Co., 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837, in which it was held that where a known, described, and definite article is ordered of a manufacturer, and is actually supplied, there is no implied warranty that it shall answer the particular purpose intended by the buyer. See, also, Grand Avenue Hotel Co. v. Wharton, 24 C. C. A. 441, 79 Fed. 43; Davis Calyx Drill Co. v. Mallory, 69 C. C. A. 662, 137 Fed. 332, 69 L. R. A. 973.

Were the express warranties complied with? It was shown quite clearly at the trial that the stokers did not work satisfactorily in connection with the boilers, and the stipulated tests were not made. There was much evidence as to the cause, and who was responsible for it. The contract provided for the use of bituminous coal, such as was readily obtainable in the local market. The evidence showed it contained a larger percentage of ash or noncombustible material than other coal, and that when subjected to unusual heat an unusual amount of clinkers was produced. The defendant claimed it was impossible to keep the furnaces free of clinkers without practically shutting down the boilers and machinery. The plaintiff contended that the impaired capacity of the boilers, due to a condition of the water tubes presently to be described, required the forcing of the stoker fires to a degree otherwise unnecessary, but that, notwithstanding this, if the instructions for the operation of the stokers had been complied with, and the clinkers removed at more frequent intervals, the difficulty could have been overcome. As to this the court charged the jury in substance that, though there was no warranty to that effect in the contract, it was a reasonable construction that a fulfillment of plaintiff's obligation required that it be practicable to remove the clinkers without closing down the machinery. The question of fact under the instruction was properly left to the jury.

There was much evidence that when the stokers were installed it was discovered that the interior of the water tubes of the boilers had been allowed to become so thickly incrusted with scale that it was not only impossible to operate the boilers satisfactorily, but also dangerous. The scale acted as a nonconductor of the heat externally applied to the tubes, and so reduced the interior water surface as to materially decrease the capacity of the boilers. The clogged tubes would also burn out, and explosions resulted. There were a number of explosions, and one man was killed. The diameter of some of the tubes, normally a little more than three inches, was so reduced by the scale as to scarcely exceed an inch. Partial tests of economy in fuel were made of one of the small boilers, and it showed that after the installation of the stoker there was an increase of more than 100 per cent. in evaporation per pound of coal. It should be said, however, that conditions were not suitable for making accurate tests, and before they were concluded a steam pipe in the engine room, with which the plaintiff had nothing to do, burst and put a stop to them. No other tests were made to determine whether the express warranties of the

contract were complied with. The plaintiff notified defendant that the boilers were not in proper condition for firing, that it was dangerous to use them, and that the stoker equipment was at defendant's risk. A few days afterwards the defendant notified the plaintiff that the stokers would not do the work required and warranted, that it would not accept them, and demanded that they be removed from the premises. Subsequently they were removed by defendant. The court charged the jury that, if the boilers and flues were in a dangerous condition or in such a condition that the tests could not be fairly made, the plaintiff would be relieved from making them. The evidence as to whose was the fault was submitted to the jury. As already observed, the jury found for the plaintiff. From this arises the question of law whether, in making its warranties and contracting for tests, the plaintiff had a right to assume that the water tubes of the boilers were in a reasonably safe and suitable condition for operation. We think it had.

The capacity of the large boiler was rated in the contract at one horse power per 10 square feet of heating surface, and plaintiff guaranteed the stokers would increase it at least 25 per cent. The rating, which was the very basis of the comparison specified, involved the assumption that the water tubes were clean. But there was evidence that the scale would cause a loss of from 10 to 30 per cent. of the capacity. It is clear there could be no fair test, if the rated capacity had been materially reduced by the condition of the tubes. In meeting its warranties as to both economy and capacity, a burden would be put on plaintiff which it did not contract to assume. The condition of the tubes was not apparent to ordinary external inspection. There was abundant evidence that a large proportion of them were not in proper condition, and many were so unfit for use as to be dangerous to the lives of the workmen. The plaintiff, in attaching its appliances, was not bound to work to those conditions. It had, at least, the right to assume that the hidden portions of the boilers were reasonably fit for the purpose for which they were designed, just as, on the other hand, the plaintiff was bound to furnish appliances reasonably fit for their particular purpose. It did not appear that there was anything in the particular style or make of the boilers which rendered the stokers inadaptable, and we think the court was therefore right in directing the jury to ascertain who was responsible for the failure. It is a well-known rule that if a party to a contract, who is entitled to the benefit of a condition upon the performance of which his responsibility is to arise, prevent the performance, the other party is excused from complying with the condition. Williams v. Bank, 2 Pet. 96, 7 L. Ed. 360. The instructions requested by defendant are inconsistent with the foregoing conclusions, and the trial court properly refused them.

There was no error in the admission or rejection of evidence. Especial complaint is made that plaintiff was allowed to prove that like stokers were successfully used elsewhere in Iowa, and also of the admission of parts of a boiler tube heavily lined with scale. The former was brought about by the claim of defendant that the stokers in question were not adapted to the use of the coal obtainable in the local

market because of its large percentage of ash. Bearing in mind that it was not denied that the stokers were in themselves meritorious appliances, it was proper to allow the plaintiff to show that in other places the stokers were successfully operated with the same kind of coal. The evidence admitted bore directly upon the contention of the defendant, and it is not perceived that any other proof could have been as satisfactory.

There was substantial evidence tending to show that the pieces of tube clogged with scale exhibited to the jury were of a lot of about 150 removed by defendant from its boilers after the stokers were rejected, and that they were an average sample. The court charged the jury that, before giving consideration to the condition of the pieces of tube exhibited, they must first find they came from defendant's boilers. As so qualified, the evidence was admissible.

The judgment is affirmed.