# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS, THE DISTRICT COURTS, AND THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

### O. C. BARBER MINING & FERTILIZING CO. v. BROWN HOISTING MACHINERY CO.

#### (Circuit Court of Appeals, Sixth Circuit. April 8, 1919.)

#### No. 3148.

1. SALES ☞439—DEFECTS—BURDEN OF PROOF.

Where a buyer's retention and use of a locomotive crane prior to suit for the purchase price were sufficient to reveal the claimed defects, the buyer, who defended on the ground of such defects, has the burden of proving them.

2. APPEAL AND ERROR ☞995—REVIEW—EVIDENCE.

On writ of error, the Circuit Court of Appeals will not weigh the evidence.

3. SALES ☞445(1)—ACTIONS—WARRANTY—JURY QUESTION.

Though Gen. Code Ohio, § 8395, specifies when implied warranties will or will not arise, yet where the facts on which such implied warranties might or might not arise are in conflict, the questions are for the jury.

4. SALES ☞445(1)—IMPLIED WARRANTIES—JURY QUESTION.

In an action for the purchase price of a locomotive crane, where the buyer defended on the ground that the crane did not comply with the implied warranty arising under Gen. Code Ohio, § 8395, because the seller was advised of the buyer's needs, etc., *held*, where there was testimony that the crane was sold under its patent or trade-name, and that the buyer's agents inspected the same, the question whether any implied warranty arose was for the jury.

5. SALES ☞425—BREACH OF WARRANTY—RIGHTS.

Under Gen. Code Ohio, § 8449, relating to breach of warranty, a buyer, on discovery of the breach, is at liberty either to return or offer to return the article and recover any part of the price paid, or to accept and keep the article and set up breach of warranty by way of recoupment, in diminution or extinction of the purchase price.

6. SALES ☞287(3)—BREACH OF WARRANTY—ACCEPTANCE.

Where a buyer of a locomotive crane retained the same and used it for a long time, there was an acceptance, even though the buyer asserted in correspondence that it had not accepted the crane, because it did not comply with an asserted warranty.

7. SALES ☞442(14)—BREACH OF WARRANTY—DAMAGES.

Where a buyer of a locomotive crane, notwithstanding discovery of alleged defects, retained and used the crane, and as a result of asserted de-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

fects it dropped stones on a building when being used, *held* that, under Gen. Code Ohio, § 8449, relating to breach of warranty, damages arising out of such use of the crane cannot be recovered, where the buyer made no attempt to have the defects remedied.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by the Brown Hoisting Machinery Company against the O. C. Barber Mining & Fertilizing Company, which counterclaimed. There was a judgment for plaintiff, and defendant brings error. Affirmed.

F. R. Marvin, of Cleveland, Ohio, for plaintiff in error.
Clinton M. Horn, of Cleveland, Ohio, for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. Action to recover purchase price, $6,400, and interest, for sale of a 10-ton type "H" 4-wheel Brownhoist locomotive crane. The Brown Company, plaintiff below and herein called the seller, recovered judgment, and the Barber Company, defendant below and herein called the buyer prosecutes error.

The terms of sale were defined by written contract. The crane was to be delivered and completely erected by the seller at the plant of the buyer in Howenstine, near the city of Canton, Ohio.[1] The buyer was then engaged in the manufacture of fertilizing lime from limestone and coal, though not by a method involving the use of a crane. The limestone and coal had been brought to the site of the plant in cars, and removed thence into the kilns in different ways; some in course of removal being dumped in piles, called stock piles, adjacent to the kilns. At the time the contract was entered into certain new kilns were in course of erection near the site of the old kilns and stock piles, and the crane in question was to be used in removing the materials from stock piles to the new kilns. The contract provides:

"The seller guarantees said crane to be capable of handling at the buyer's plant No. 1, Howenstine, Ohio, 300 tons of limestone and mine-run coal from stock pile to cupola in 10 hours, the relative proportions of stone and coal to be three of stone to one of coal."

The petition alleges that the seller delivered and erected the crane and equipment at the buyer's plant in January, 1915, and in all respects complied with the terms of the contract; that the buyer had been in the continuous possession and use of the crane and equipment from that time to the commencement of the suit, October 8, 1915; and that, although the price was payable February 1, 1915, the buyer refused to pay any part of it. The answer admits these allegations, except the one as to compliance with the contract, avers that the crane was

[1] The crane and its equipment were described in the contract thus: "One 10-ton type 'H' 4-wheel Brownhoist steam locomotive crane, with 55-ft. boom, 8-ft. 0 in. gauge, ¾ cab double drum equipment, 16000# counterweight in truck frame and Brownhoist patent 54 cu. ft. grab bucket."

defective in several particulars, and seeks damages in diminution—indeed, in extinction—of the purchase price. The verdict, as well as the judgment, is upwards of $900 less than the amount of the purchase price and accrued interest, though how this happened does not distinctly appear; but, as will be pointed out when considering the measure of damages applied, it is reasonably clear that the sum mentioned was fixed and allowed as the buyer's damages.

[1] 1. *Guaranteed Capacity of the Crane.* It is said that the crane is not capable of removing 300 tons of material in accordance with the terms of the guaranty. The testimony is in conflict upon this subject. This is particularly true of certain tests that were made. Upon this issue it is objected that the court placed the burden of proof upon the buyer. The buyer's retention and use of the crane prior to commencement of the suit were concededly sufficient to reveal the claimed defects; and certainly it could not assert the right to recover damages on account of defects without showing what they were. This was an affirmative defense; and the rule is to place the burden of proving such a defense upon the defendant, the buyer here. Crescent Milling Co. v. H. N. Strait Mfg. Co., 227 Fed. 804, 809, 142 C. C. A. 328 (C. C. A. 8); Dodsworth v. Hercules Iron Works, 66 Fed. 483, 488, 13 C. C. A. 552 (C. C. A. 6).

[2] It is settled that an appellate court of the United States does not weigh the evidence. Besides, although the use of the guaranteed capacity does not seem in practice to have been needed, it is clear enough that the crane easily met the daily requirements of the buyer in the removal of stone and coal from the stock piles to the kilns. The verdict, apart from the allowance of damages as stated, would naturally imply that the guaranty respecting the capacity of the crane was substantially complied with; the effect of the verdict, however, must be considered later.

[3, 4] 2. *Implied Warranty Claimed.* It is urged that conditions existed here which, under the Ohio Uniform Sales Act (Gen. Code, § 8395), charged the seller with an implied warranty that the crane was reasonably fit for the purposes for which the buyer purchased it. Assuming that there is no inconsistency between the admitted express guaranty and the claimed implied warranty (G. C. O. § 8395, par. 6), several considerations arise. It is said that the trial judge erred in refusing to instruct the jury that the implied warranty claimed was, as matter of law, included in the seller's obligation. Against this it is contended, and several witnesses testify without contradiction, that the name under which the crane was sold was its trade-name, and that the grab bucket was patented; and the jury was permitted to consider whether, in the light of all the evidence, including the descriptive matter in the contract, the crane was sold under its patent or trade-name, and was told that if the sale was so made there could not be an implied warranty. This was in accord with paragraph 4 (section 8395):

"In the case of a contract to sell or a sale of a specified article under its patent or other trade-name, there is no implied warranty as to its fitness for any particular purpose."

The buyer claims in avoidance of this provision that the undisputed testimony shows that the seller was fully advised of the purposes for which the crane was desired, and that the buyer relied on the seller's skill and judgment as to the fitness of the crane for such purposes. This is to insist that the claim of implied warranty is controlled exclusively by paragraph 1 (section 8395):

"When the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, * * * there is an implied warranty that the goods shall be reasonably fit for such purpose."

Here again the case presents difficulty touching the state of the evidence. True, before the contract was entered into the seller was advised of the place at which the crane was to be erected and of the purpose to use it in transferring the materials from the stock piles to the kilns; but the testimony is in conflict as to the seller's previous knowledge of certain matters of which the buyer subsequently complained. It is important to note that the matters of subsequent complaint for the most part concern the grab bucket; one complaint is that frequently one or more large pieces of limestone are caught between the teeth or jaws of the bucket, which so far prevent the bucket from closing as to permit smaller pieces to fall upon and injure the roof of a building and endanger employés of the buyer during the movement of the bucket from the stock piles to the kilns; and the other is that the bucket is not adapted to the proper distribution of the materials when discharging them into the kilns.

It is perhaps enough to say of the first of these complaints (1) that the testimony is in conflict upon a question whether the buyer attempts to carry larger stones than those previously disclosed in the stock piles or represented as intended to be conveyed; and (2) that the evident liability and tendency of large pieces of stone or coal so to be caught and of the stone, rather than the coal, to hold the jaws of the bucket apart and permit the escape of smaller pieces in any attempt to load and carry such material, ought to have been revealed by examinations which admittedly the buyer through its general manager and expert engineer made of this type of buckets before the contract was entered into (paragraph 3, § 8395); this is strengthened by the fact that no complaint is made touching the handling of coal, the other material.

As to the second complaint, there is testimony from which it might fairly be inferred that the distribution would not be open to criticism if the bucket were properly placed and operated when discharging the materials into the kilns. These complaints would seem on their face to affect the method of using rather than the inherent qualities of the bucket. It is to be observed, moreover, that the testimony offered to support the complaints was not received for the purpose of showing an implied warranty that the crane would handle stone without dropping any of the smaller parts, or would distribute the materials in any particular way in the kilns; it was received for the purpose of determining whether the buyer made known to the seller the pur-

pose for which it needed the crane, and relied on the skill and judgment of the seller in that behalf.

If, then, it be borne in mind that the solution of the issues of implied warranty depended on the one hand upon whether the crane was sold under its trade-name, and on the other whether the buyer made known to the seller the purposes of purchasing the crane and also relied on the seller's skill and judgment as to the fitness of the crane, and, further, that testimony was received on both of these subjects independently of the testimony relating to the method pursued in loading and operating the bucket, it becomes plain that the trial judge believed that the testimony was in such conflict as to require its submission to the jury. And the questions were submitted under instructions as to what facts either express or implied would justify a finding that an implied warranty of fitness existed, and with a further instruction that such a finding was permissible notwithstanding the express guaranty as to the capacity of the crane. The court was thus dealing with distinct and in some respects opposed issues, and also with conflicting testimony touching the problem of implied warranty; in these circumstances the applicable provision of the Sales Act was to be ascertained according to the preponderating testimony under the several issues—as, for instance, was the crane sold simply under its trade-name, or did the buyer make known to the seller the purpose for which the crane was required, and particularly did the buyer rely on the seller's or on its own skill and judgment?

Manifestly these questions, like any ordinary disputed questions of fact, were determinable by the jury. Mr. Williston says, in his work on Sales (section 214, at p. 284):

"If the seller's liability is based on representations and affirmations, because of which the law imposes upon him the obligations of a warrantor, disputed questions of fact as to the nature of the assertions and the reliance of the buyer will generally give rise to disputed questions of fact, which will require submission to the jury of the whole question of warranty."

In Kansas City Bolt & Nut Co. v. Rodd, 220 Fed. 750, at page 755, 136 C. C. A. 356, at page 361, our own court held it to be error to instruct "the jury not to consider evidence of plaintiff's reliance upon the alleged warranty." Again, we may by way of analogy call attention to the ruling of this court in D. H. Watjen & Co. v. Louisville Tobacco Warehouse Co., 240 Fed. 919, 923, 153 C. C. A. 605, that issues of fact whether a sale had been conducted under rules of an association or wholly through private negotiation, and whether a warranty had been given concerning the subject of the sale, were to be determined by the jury, and that it was error to refuse so to submit the issues. In Dushane v. Benedict, 120 U. S. 630, 646, 648, 7 Sup. Ct. 696, 30 L. Ed. 810, where the plaintiff sought to recover the purchase price of rags and the defense was breach of warranty regarding the quality of the rags, it was held erroneous to direct a verdict for the plaintiff; the court saying that under the evidence the question whether an express or implied warranty existed should have been submitted to the jury. And submissions to the jury of similar questions under appropriate instructions were approved in Noble v. Fagnant, 162

Mass. 275, 285, 286, 38 N. E. 507; Rodgers & Co. v. Niles & Co., 11 Ohio St. 48, 49, 57, 78 Am. Dec. 290; Henry & Co. v. Talcott, 175 N. Y. 385, 393, 67 N. E. 617; Horse Importing Co. v. Novak et al., 105 Iowa, 157, 159, 160, 74 N. W. 759; Englehardt v. Clanton, 83 Ala. 336, 341, 342, 3 South. 680; Foster v. Smith, 184 Ill. App. 255, 257; Woods v. Thompson, 14 Mo. App. 38, 45, 46, 88 S. W. 1126. Aside from the allowance of damages of upwards of $900, the effect of which we shall presently determine, the logic of the verdict is that under the evidence either an implied warranty did not arise or, if one did arise, it was substantially fulfilled.

[5-7] 3. *Measure of Damages, and Effect of Verdict.* The instruction on the subject of measure of damages in substance was that if the jury should find that the express guaranty had been broken, or that the implied warranty claimed had been proved, and also broken, the loss would be the difference between the value of the crane in its actual condition at the time of delivery and the value it would have possessed if all the seller's obligations had been met; that in estimating this difference the latter value should be treated as $6,400, the contract price, and the former the market value, or, in the absence of a definite market value, the actual value of a crane of this kind, though not meeting the requirements of the sale; and that the evidence did not tend to show any proximate damages other than such reduction in value of the crane. Counsel's objection to this portion of the charge is that it was not comprehensive of the buyer's entire loss, since it prevented the jury from considering claimed proximate damages occasioned by breach of warranty; reliance being placed on paragraphs 6 and 7 (G. C. O. § 8449, Sales Act):

"(6) The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events from the breach of warranty.

"(7) In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty."

The insistence is that the injury to the roof on which pieces of stone dropped fom the bucket, cost of employing a man to distribute the materials in the kilns, and waste of material falling from the bucket constitute "loss directly and naturally resulting, in the ordinary course of events from the breach of warranty" (paragraph 6), and also that such loss was due to "special circumstances showing proximate damage of a greater amount" than the difference between the value of the crane at the time of delivery and the value it would have had if it had "answered to the warranty" (paragraph 7).

We cannot accept these views. It will be observed that the contention of counsel is not aimed against the court's allowance of recovery for the difference between the values of the crane as before pointed out; it is against the refusal of the court to recognize the items of damage claimed as a loss additional to the difference in values allowed. The learned trial judge excluded these items for the reasons, in substance, that the buyer had accepted and continued

to use the crane with knowledge that such use would result in the very damages complained of, and that damages so inflicted are not recoverable. It is not pretended that the claimed defects were of a nature to escape discovery when the crane was first put into operation and tested. Assuming that a breach of the express guaranty or of an implied warranty occurred, the buyer, it is true, was at liberty either to return or offer to return the crane and to recover any part of the purchase price it might have paid (section 8449, par. 1, d), or to accept or keep the crane and set up breach of warranty by way of recoupment in diminution or extinction of the purchase price (Id. par. 1, a). It scarcely need be said that the buyer elected to rely upon this latter provision. We agree with the District Judge that the buyer accepted the crane, for, although it asserted in correspondence that it had not accepted, its conduct through retention and long use of the crane was a contradiction of the assertion. Dodsworth v. Hercules Iron Works, 66 Fed. 483, 487, 13 C. C. A. 552 (C. C. A. 6).

In this situation, the right to recover damages resulting through the continued use of the crane must be considered in connection, not alone with the buyer's claim of a breach of warranty, but also and particularly with its claim that it was necessary to remedy the defects complained of. It ought; to be sufficient to say of the special damages now under consideration that they cannot be, as counsel insist, the direct and natural result of a breach of warranty or due to special circumstances showing proximate injury within the meaning of the Sales Act, and for the obvious reason that the buyer's own conduct was an intervening and the immediate and operating cause. Indeed, the general rule is that a buyer cannot, after discovery of defects in a warranted article, accept and continue to use it in an unchanged condition, and so inflict injuries upon himself and his property at the expense of the seller. Uhlig v. Burnum, 43 Neb. 584, 595, 61 N. W. 749; Swift & Co. v. Redhead, 147 Iowa, 94, 105, 122 N. W. 140; American Glue Co. v. Rayburn, 150 Mich. 616, 620, 114 N. W. 395; Isbell-Porter Co. v. Heineman, 113 App. Div. 79, 83, 98 N. Y. Supp. 1018. and citations; Ducas Co. v. American Silk Dyeing Co., 48 Misc. Rep. 411, 415, 95 N. Y. Supp. 590; Frick Co. v. Falk, 50 Kan. 644, 647, 32 Pac. 360; Cooper v. National Fertilizer Co., 132 Ga. 529, 532, 533, 64 S. E. 650; Hitchcock v. Hunt, 28 Conn. 343, 348, 349; 1 Sutherland on Damages (4th Ed.) § 89, p. 317 top. We do not find any decision, and none is cited, which is opposed to the rule stated or to the decisions set out in its support. This is not to overlook the cases of National Refrigerator Co. v. Parmalee, 9 Ga. App. 725, 72 S. E. 191, and Springfield Milling Co. v. Barnard & Leas Mfg. Co., 81 Fed. 261, 26 C. C. A. 389 (C. C. A. 8). We think that in each of those cases the conduct of the seller operated to charge it with affirmatively consenting to the buyer's use of the article as a fair method of ascertaining the damages suffered while efforts were being made to remedy admitted defects; if this is not rightly to interpret the ultimate facts disclosed in those cases, we cannot follow the decisions.

It results that the court properly excluded the evidence offered to show the items and amounts of damage claimed in addition to such as may have been embraced in the difference allowed between the

values respectively of the crane as contracted for and as delivered. The difficulty with the instant case in this regard is that, aside from the loss covered by this difference in values, the buyer made no showing of any loss incurred within any recognized scope of the seller's liability; it is hence vain to urge, as counsel do, that the matter of special damages was a question for the jury. The parties were throughout more or less at odds upon one feature or another of the crane. Yet the buyer does not appear to have made any effort through outside manufacturers to remedy the claimed defects; it does not show, for instance, whether the grab bucket was susceptible of alteration and remedy nor the expense that any available change would have involved; it simply shows, apart from contentions with the seller, a persistent use of the crane in the regular course of its business, notwithstanding the injurious effects which such use would obviously inflict upon it and its property. The buyer's course was opposed even to the familiar rule that a person injured through wrongful act of another must so far as reasonably practicable mitigate the damage. What in the judgment of ordinarily careful and experienced men would have been a reasonably prudent course to adopt and pursue in similar circumstances, and (apart from the difference in values allowed) what, if any, damage would have directly and proximately ensued, are left to conjecture, although, as to the existence and breach of the implied warranty claimed, the burden of proof was upon the buyer. Noble v. Fagnant, supra, 162 Mass. 286, 38 N. E. 507; Sayles v. Quinn, 196 Mass. 492, 495, 82 N. E. 713; Johnson v. Bowman, 26 Neb. 745, 750, 42 N. W. 754; Crescent Milling Co. v. H. N. Strait Mfg. Co., supra; Dodsworth v. Hercules Iron Works, supra.

It is to be presumed that this feature of the case was lacking in facts, except as to the use already considered; and it need not be added that such lack of proofs could not be supplied through guesswork. An appellate court certainly cannot help out a situation like this.

The effect of the verdict, then, is plainly to show that the crane was worth about $900 less by reason of its condition at the time of delivery than it would have been if it had answered to the express guaranty and to the implied warranty, assuming that such a warranty existed. But it cannot be important whether the reduction was due to one or the other, or to both, of these causes, since the result would be the same, if it were assumed that the jury found under the court's instruction that the crane was sold under its patent or trade-name and consequently that no implied warranty could have arisen as to fitness.[2]

[2] In view of the fact that the question of implied warranty was submitted to the jury, it has, of course, been unnecessary here to consider how far, if at all, that question might as matter of law have been governed by the express terms of the contract itself as respects the contention that the crane was sold under its patent or trade name. See, for example, majority and minority opinions, with citations, in Davis Calyx Drill Co. v. Mallory, 137 Fed. 332, 334, 338, 69 C. C. A. 662, 69 L. R. A. 973 (C. C. A. 8); also Savery Hotel Co. v. Under-Feed Stoker Co., 178 Fed. 806, 808, 102 C. C. A. 254 (C. C. A. 8); Baer Grocery Co. v. Barber Milling Co., 223 Fed. 969, 972, 139 C. C. A. 449 (C. C. A. 4).

It is not necessary further to pursue the subject; we have considered the other assignments, and have found no prejudicial error; accordingly the judgment will be affirmed.