JACKSON *et al. v.* PARSLEY.

(*Nashville,* December Term, 1938.)

Opinion filed Dec. 17, 1938.

John D. Wiseman, of Murfreesboro, for plaintiffs in error.

C. C. Jackson, of Murfreesboro, for defendant in error.

Mr. Justice McKinney delivered the opinion of the Court.

Parsley sued Jackson Brothers for damages for breach of warranty in the purchase of a new Chevrolet truck chassis. The truck was demolished due to the fact that the gears on same were defective. There was a verdict in favor of Parsley for $500, upon which judgment was entered in the circuit court. The Court of Appeals held that Parsley was entitled to damages, but reversed and remanded the case solely for the purpose of ascertaining the damages under the rule which it adopted, namely, the difference between the market value of the defective truck immediately after the accident and its market value had it conformed to the warranty, and, from the damages thus ascertained, the balance of the purchase money which Parsley owed on the truck at the time of the accident is to be deducted.

The case is in this court solely upon the petition of

·Jackson Brothers for a writ of *certiorari*, it being their contention that there is no liability because (1) there was a compromise and settlement; and (2) Parsley used the ·truck with full knowledge of the defect and the danger attending its use in its defective condition.'

■ With regard to the first contention, it is sufficient to state that there is conflict in the testimony as to whether a compromise agreement was entered into as to the liability of the seller to the buyer, and the finding of the jury upon this issue is binding upon this court.

■ In order to dispose of the second contention, it is necessary to state the material facts as found by the jury.

Jackson Brothers, a partnership, are the local Chevrolet dealers in Murfreesboro. Parsley is engaged in the trucking business, transporting fruits, vegetables, eggs, and produce over most of the Southern states for W. H. Tompkins, of Nashville.

· On June 15, 1935, Parsley purchased the truck in question from Jackson Brothers for $898.12. He was allowed a credit of $397 for his old Chevrolet truck, and for the balance he executed twelve notes of $41.67 each payable monthly. Only one of these notes had been ·paid when the accident occurred about a month after ·the truck was purchased. Parsley equipped the truck with a bed and tires, and on his first trip with it discovered that it would jump out of gear when going down hill. He returned the truck to the seller, who tried to fix it, but it would still jump out of gear. · He brought it back again and the seller put in new gears, but these gears failed to hold, so that he returned it the third time, and was told by a member of the firm that they could not correct the defect, but would have a mechanic come from the factory and fix it, and stated further for him to "go ahead

and use it until the man got there from the factory." Parsley told him that it was dangerous to use the truck in that condition, but with this knowledge, instead of turning over another truck for use until this one could be repaired, it was insisted that Parsley use the truck until the defect could be corrected. About a month after acquiring the truck, Parsley loaded it at Nashville with meat, eggs, and butter for transportation to Asheville, North Carolina, and while driving down a hill in that State the truck jumped out of gear, ran off the highway into a ditch, and was demolished.

Parsley was required to carry collision insurance, and, after the wreck, settled with the insurer by turning over the truck to it, after removing his bed and tires, upon its agreement to pay off his eleven purchase money notes then held by a Finance Corporation.

It will be thus seen that Parsley was out $41.76 and his old truck, valued at $397, but had the use of the truck for a month, during which period he drove it about one thousand miles. He was entitled, under the guarantee, to a good truck, and there can be no doubt but that the proximate cause of his loss was the defective truck.

The seller invokes the general rule that a buyer cannot, after discovery of defects in a warranted article, continue to use it in an unchanged condition, so as to inflict injuries upon himself and his property at the expense of the seller. Under the facts of this case, however, the seller is not in a position to raise this question since, with full knowledge of the defect and the danger attending its operation, it insisted on the purchaser using it until the defect could be remedied. Parsley needed the truck in his hauling business. Necessarily he would have suffered loss had he refrained from using the truck

pending the arrival of a mechanic from the factory, and for such loss the seller would have been liable. To avoid this liability the seller insisted that the purchaser continue to use the truck in its defective condition, trusting thereby that the damages might be less than would result from not using the truck until it could be repaired. Since the purchaser followed the instructions of the seller the latter is in no position to say that he should have disobeyed those instructions and pursued some other course.

Section 7262 of the Code provides, in part, as follows:

"(1) Where there is a breach of warranty by the selser, the buyer may, at his election: . . .

"(b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty; . . .

"(6) The measure of damages for breach of warranty is the loss, directly and naturally resulting, in the ordinary course of events, from the breach of warranty.

"(7) In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty."

We think, as did the Court of Appeals, that this is a case where the buyer is entitled to damages for the loss directly and naturally resulting in the ordinary course of events, namely, furnishing him with a defective truck and insisting on its use in that condition until it could be repaired.

In *Hayssen Mfg. Co.* v. *Mootz,* 116 W. Va., 204, 179 S. E., 301, the purchaser was awarded damages for breach

of warranty due to defects in a bread wrapping machine. In that case the syllabus was prepared by the court and is in this langauge:

"Where the buyer of a machine, after discovering that it does not meet the requirements of the specific warranty of efficiency, notifies the seller, and continues to operate it while the seller makes repeated efforts to remedy the mechanical difficulties, the buyer is not precluded by his conduct from asserting a claim for damages resulting from the machine's malfunctioning."

We also quote from the opinion as follows:

"Defendant's evidence tending to show his loss and damage because of the failure of the machine properly to do the work which was expected of it, is sufficient to sustain the verdict.

"As grounds for reversing the judgment and setting aside the verdict, the plaintiff relies principally upon two legal propositions: First, that the breach, if any, arose immediately after the defendant began operating the machine and that he had no right to continue in his efforts to operate the same and thereby to pile up damages; second, that it was the duty of the defendant to minimize his loss and that it was reversible error to allow him to recover damages which he might have avoided by adherence to this rule.

"The juridical basis of these propositions is sound, but, under the evidence, which we must view in the light most favorable to the defendant because of the verdict, we are of opinion that the said legal principles are not controlling herein. This view is taken because the jury was warranted in believing from the evidence that the defendant's continuous efforts through a period of months to operate the machine were encouraged by the

plaintiff. Its mechanics and inspectors on the occasions of their visits to the defendant's bakery, after making adjustments of the machine, took the position each time that the machine would function properly. Under such circumstances, the defendant's extended efforts to use the machine did not prejudice his rights under the warranty. *Advance Rumely Thresher Co.* v. *McCoy,* 213 Cal., 226, 2 P. (2d), 157. At length, in November, 1932, the plaintiff installed for the defendant a new machine to replace the unsatisfactory one.

"If the defendant had acted on his own initiative alone in his protracted efforts to use the machine, he probably would be precluded by his conduct from recovering special damages sustained after discovery of the breach of warranty. *Morgan Lumber & Mfg. Co.* v. *McDaniels and Landis,* 101 W. Va., 87, 131 S. E., 879. But, for the reasons stated, we think that this legal principle does not apply. The same state of facts operates to excuse him from minimizing the damages. *Taylor* v. *Lumber Co.,* 90 W. Va., 530, 537, 111 S. E., 481. His course of conduct was in harmony with that adopted by the plaintiff. If the seller had desired to avoid the risk of special damages incident to the breach of warranty, it could have replaced the machine promptly without procrastinating through many months in a vain hope that the unsatisfactory machine would operate properly."

In *National Refrigerator & Butchers' Supply Co.* v. *Parmalee,* 9 Ga. App., 725, 72 S. E., 191, Parmalee was awarded damages for breach of warranty in the purchase of a refrigerator and for loss of meat. By way of defense it was insisted that the buyer brought the loss on himself by continuing to use the refrigerator after knowledge that some of his meat would spoil if he used it.

In affirming the judgment of the trial court, the appellate court said [page 192] : ''The plaintiff was running a business of considerable size. The refrigerator was not one of the small kinds found in our kitchen or pantries, but was large and expensive. He complained to the defendants, and they from time to time were attempting to remedy the situation and to make the refrigerator work satisfactorily. Now, the duty resting on the plaintiff was to use common prudence—to do what an ordinarily prudent man would have done under the circumstances—in order to make the damage as small as reasonably possible. Would an ordinarily prudent man have abandoned the use of the refrigerator, and have suffered perhaps a greater loss from the suspension of his business until he could get another? The percentage of the plaintiff's meat which was lost was relatively small. Ought he for such a small loss to have abandoned the refrigerator as a thing totally worthless, especially in view of the negotiations which were going on between him and the defendants as to the remedying of the defects? These were jury questions.''

The principle announced in these cases was approved by the Circuit Court of Appeals in *O. C. Barber Mining & F. Co.* v. *Brown Hoisting Mach. Co.*, 6 Cir., 258 F., 1, with respect to which the court, speaking through Judge WARRINGTON, said [page 7] : ''We think that in each of those cases the conduct of the seller operated to charge it with affirmatively consenting to the buyer's use of the article as a fair method of ascertaining the damages suffered while efforts were being made to remedy admitted defects.''

▮ In the instant case there was not only a consent but a request on the part of the seller that the buyer use

the truck until it could be repaired, which is a stronger case than those referred to above.

The buyer should be made whole in this case since his loss was due directly and proximately to the breach of warranty on the part of the seller.

While the declaration is inartificially drawn, we think it can be construed as an action for breach of warranty. Its allegations as to a settlement relate to the liability of the insurer, and quite evidently was not intended as an admission that there had been a settlement between the buyer and the seller as to the loss sustained by the former. We consider the measure of damages adopted by the Court of Appeals just and fair, and therefore deny the writ. While we have limited our discussion to what we conceive to be the controlling and important questions in the case, we have considered all of the assignments of error and find that they are without merit.